■ CITY OF NEW YORK et al., Petitioners, v THOMAS COLE et al., Respondents.—Determination of the State Human Rights Appeal Board, entered July 5, 1977, which affirmed the order of the Commissioner of the State Division of Human Rights, entered February 27, 1976, finding that petitioners had discriminated against complainant Thomas Cole because of disability, for the period September 30, 1974 to December 9, 1974, in refusing to assign him to light clerical duty, in violation of the Human Rights Law (Executive Law, art 15), and awarding complainant back pay for such period, with interest from November 4, 1974 at the rate of 6% per annum, modified, on the law, to reduce the rate of interest awarded to 3% and otherwise confirmed, without costs and without disbursements. The cross motion by the State Division of Human Rights to dismiss the petition and for enforcement of the commission's order is granted, as modified, without costs and without disbursements. Complainant had been employed as a peace officer for the Department of Social Services. On June 29, 1973, while on duty, he sustained an injury to his left shoulder which disabled him from the performance of his regular duties. He was thereafter on sick leave for a period of time, receiving workmen's compensation benefits. When he returned to work in November, 1973, he discovered that his disabling condition hampered him in the performance of his duties. His request that he be assigned to light duty was denied on the ground that there were no light duty assignments in the department. Complainant went on medical leave of absence from February 4, 1974 to December 9, 1974. However, he remained on petitioners' payroll until March 29, 1974, when his accumulated annual leave, sick leave and overtime were exhausted. On September 30, 1974, complainant again requested that he be restored to the payroll and assigned light duty because of his medical condition. This request was made after the effective date of the amendment to section 296 (subd 1, par [a]) of the Executive Law (L 1974, ch 988), which made it an unlawful discriminatory practice for an employer, "because of * * * disability * * * of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." This request was again denied. He was informed that no light duty assignments were available for persons medically unable to perform regular duties. Complainant thereupon filed the subject charges with the State Division of Human Rights, alleging that the refusal to assign clerical or light duty to partially disabled employees was an unlawful discriminatory practice. After a finding by the division that there was probable cause to credit the allegations of the complaint, the matter was set down for a hearing. During the pendency of the proceeding, complainant was restored to the payroll and given a light duty assignment on December 10, 1974, pursuant to a general order from the New York City Human Resources Administration, which authorized light duty assignments for employees who had become medically unable to perform their regular duties. At the hearing, it was contended that petitioners had developed a policy whereby assignments to light duty were given only to officers who had been de-deputized as a result of the pendency of misconduct charges, thereby legally disqualifying them from performing the regular functions of a peace officer. Petitioners, therefore, claim that the decision not to assign complainant to a clerical or other limited duty assignment was the result of this policy and was not because of Cole's disabling condition. They accordingly contend that there was no unlawful

discrimination within the terms of the statute (Executive Law, § 296, subd 1, par [a]). This is the position assumed by the dissent in finding that complainant's disability had nothing whatever to do with the failure or refusal of petitioners to assign him to clerical duty. The dissent asserts that the determination was essentially an administrative one, to assign such duty only to officers against whom charges of misconduct were pending. However, it is the practice of refusing to assign temporarily disabled personnel to such light or limited duty positions while assigning others not disabled to such positions which the commissioner held to be discriminatory. That very practice, which petitioners apparently abandoned in or about December, 1974, effectively precluded retention of any employee who was temporarily disabled from performing the regular duties of his position. The contention in the dissent that complainant is not suffering from a "disability" within the meaning of the statute is not supported by the statutory language. Plainly complainant is suffering from a disability "unrelated to the ability to engage in the activities involved in the job or occupation which a person claiming protection of this article shall be seeking." He was found "disabled" so that he "could not perform his regular duties". However, when restored on December 10 he was assigned to "light duty because of his physical condition." This is the position he sought. Although complainant was repeatedly advised there were no light duty assignments, the fact is that clerical or other light duty assignments did exist, albeit allegedly reserved for other officers including those with misconduct charges pending against them. After hearing, the commissioner found that the refusal to assign complainant to light or limited clerical duty during the period from September 30, 1974 to December 9, 1974, while at the same time, freely assigning nondisabled officers to such duty, constituted an unlawful discriminatory practice prohibited by section 296 (subd 1, par [a]) of the Executive Law. The commissioner's determination and findings are supported by substantial evidence in the record. The administrative decision is neither irrational nor arbitrary or capricious and, accordingly, should not be disturbed (Matter of Pell v Board of Educ., 34 NY2d 222; State Div. of Human Rights v Columbia Univ. in City of N. Y., 39 NY2d 612). The commissioner was, therefore, justified in directing that complainant recover appropriate back pay for the period from September 30, 1974 to December 9, 1974. However, the rate of interest imposed exceeded the maximum 3% rate on accrued claims against a municipal corporation pursuant to subdivision 1 of section 3-a of the General Municipal Law (see, also, Acme Bldrs. v County of Nassau, 36 AD2d 317, affd 31 NY2d 924). Concur—Evans, Fein and Markewich, JJ.; Silverman, J. P., dissents in part in a memorandum as follows: I would annul, on the law, the determination of the State Human Rights Appeal Board and the State Division of Human Rights, and I would dismiss the cross motion of the State Division of Human Rights for enforcement. Complainant, a security officer employed by the New York City Department of Social Services, functioned as a peace officer. His duties included the protection of life and property, the maintenance of peace and order and the control of crowds. The use of physical force was sometimes required to perform his duties. On or about June 29, 1973 complainant while on duty sustained an injury to his left shoulder. As a result of that injury he could not perform his regular duties. After exhausting his workmen's compensation benefits, medical leave, sick leave and overtime, accrued leave, etc., he began a leave without pay. He requested the Social Services Department to assign him to light duty. This was denied to him on the ground that no light duty assignments were available. Effective September 1, 1974 the State

Human Rights Law (Executive Law, art 15), was amended to forbid discrimination in employment because of disability. About September 30, 1974 complainant again requested light duty and was again refused. About December 10, 1974, following a general order from the City Human Resources Administration, the parent body of the Social Services Department, complainant was restored to the payroll as a special officer and given a light duty assignment. The State Division of Human Rights has found that the failure to assign him to such light duty between September 30 and December 10, 1974 constituted an unlawful discrimination in employment and awarded complainant compensatory damages and directed the Department of Social Services to take certain corrective actions. The State Human Rights Appeal Board affirmed. In my view there has been no showing of unlawful discrimination against complainant because of his disability, or any substantial evidence to sustain the finding that there was such discrimination. To begin with, complainant is not suffering from a "disability" within the meaning of the State Human Rights Law. Subdivision 21 of section 292 of the Executive Law defining the term "disability," provides: "provided, however, that in all provisions of this article dealing with employment, the term shall be limited to physical, mental or medical conditions which are unrelated to the ability to engage in the activities involved in the job or occupation which a person claiming protection of this article shall be seeking." To the same effect see section 296 following paragraph (c) of subdivision 3-a. Plainly complainant's condition is not "unrelated to the ability to engage in the activities involved in the job or occupation." The State Division of Human Rights found that: "As a result of said injury, Complainant was disabled and could not perform his regular duties as a Special Officer." Further, the statute limits unlawful discriminatory practices to those specified in sections 296 and 296-a (Executive Law, § 292, subd 4). The only relevant provision of section 296 is: "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." The refusal to assign complainant to light duty was not "because of the * * * disability" of complainant and it was not "discriminatory." The only light duty jobs to which complainant points were assignments of special officers who because of charges of misconduct were "de-deputized" by the police commissioner and were thus legally disqualified from performing the functions of a peace officer. There is nothing to indicate that disability or the lack thereof had anything to do with such assignments. It is obvious that there must have been a great many employees who were not disabled and not assigned to light duty. A claim of discrimination on any particular ground can only be predicated on a showing that, but for that ground, the complainant would have been assigned, or at least would have had more chance of being assigned. There is no such showing. The complainant's disability was simply irrelevant to these assignments. Whether the Department of Social Services assignment of employees to this light duty was a proper administrative practice or not is not the issue before us. The issue is whether the complainant was denied such an assignment because of his disability. There is simply no evidence in this record that the complainant's disability had anything to do with the failure to assign him. The principle is established that discrimination requires a showing that the employer's action was because of the invidious distinction and not merely

that it may have incidentally affected adversely those within the protected class. Thus, considering a claim of sex discrimination in *Matter of Page Airways of Albany v New York State Div. of Human Rights* (39 NY2d 877, 878), the Court of Appeals said: "[w]e do not believe that an employer unlawfully discriminates when he establishes a reasonable grooming policy which may be said to differentiate between male and female. * * * There is no indication in the record before us that Page Airways' regulations were the result of an invidious intention to affect, to harass or to deprive one sex of equal opportunity or treatment * * * Thus the instant regulations do not constitute discrimination within the meaning of the applicable statutes." With respect to a claim that a requirement that employees be clean shaven involved a religious discrimination, the Court of Appeals said: "Policy resting on a desire to promote business by greater public support could justify the exclusion by an employer of beards and have no possible religious connotation. Such a rule, so motivated, as it affected employment, would not come within the bar of the statute unless it be shown, that which is not shown here: the employment decision was in fact actuated by discrimination against creed." *(Matter of Eastern Greyhound Lines Div. of Greyhound Lines v New York State Div. of Human Rights,* 27 NY2d 279, 283, affg 34 AD2d 916.) Nor is discrimination prior to December, 1974 shown by the fact that at that time the Department of Social Services adopted a policy of assigning disabled persons to such light duty jobs. This was merely a case of a public employer acting in accordance with the Governor's suggestion which "urged employers to go beyond their legal obligations in adapting jobs and working conditions to the special needs of such people, thereby recognizing that the handicapped often need more than equal treatment." *(Kuhnle v New York State Div. of Human Rights,* 40 NY2d 720, 722-723.) The city should not be penalized because it went beyond its legal obligations.