OPINION OF THE COURT
Lorraine S. Miller, J.
On June 3 and 4, 1997 a unanimous jury awarded plaintiff, Maureen Mclntryre, damages of $6,600,000 ($1,600,000 in compensatory and $5,000,000 in punitive damages) at the conclusion of an intensive seven-day trial on her claims of sexual harassment, retaliation and intentional infliction of emotional distress.[1]
Plaintiff now seeks costs of $2,051.30 and attorney’s fees pursuant to Administrative Code of the City of New York § 8-502 (f), which specifically authorizes an award to the prevailing party of such allowances where, as here, there has been a finding of discrimination by the trier of fact. Plaintiff also seeks an award of preverdict interest of $362,000 from December 1,1991 on both the compensatory damages and back pay awards.
*327 In order to determine the amount to be assessed in this complex matter, the court held a hearing on September 22, 23 and 24, 1998. Plaintiff’s lead counsel, Murray Schwartz, and his partner, Davida Perry, testified as to the nature and hours spent on the matter from the time of their retention in early January 1994. There was also testimony by an employee, Alexander Jeffrey.
I. DISCUSSION
In 1991 the New York City Council saw fit to authorize by statute the award of attorney’s fees and costs to the victim of discrimination who prevailed, as here, in a lawsuit (Administrative Code § 8-502 [f]). The rationale behind such legislation appears to be an intent to make the prevailing party as whole as possible, as well as to deter others from engaging in similar reprehensible conduct. Accordingly, the analysis herein can be guided by but should take a somewhat different route from the typical quantum meruit analysis for this is not a case of an attorney suing his own client because of wrongful discharge or a refusal to pay fees. Rather, this is an additional award to the plaintiff by statute.
In determining the amount of legal fees to be assessed against the defendant herein, the court also notes that discrimination litigation significantly differs from other types of cases that regularly appear before our State courts. Indeed, the field has become one of particular specialization requiring practitioners to be conversant with a broad variety of Federal statutes and decisions in addition to the Human Rights Laws enacted by both New York State and the City of New York.
A. Calculating Reasonable Attorney’s Fees
The fixation of legal fees is very troubling to a court for in analyzing the fees sought, it appears to demean a colleague and denigrate his/her services, competence and/or integrity. Indeed, several courts have struggled with how fees should be measured. In Matter of Potts (213 App Div 59, appeal dismissed 241 NY 510, affd 241 NY 593), the Fourth Department said, in part, that a court in determining the reasonableness of an attorney’s fee should consider the time spent, the difficulties involved, the nature of the services, amount involved, professional standing of counsel and results obtained (see also, Matter of Freeman, 34 NY2d 1). The evaluation of what constitutes reasonable counsel fees has consistently been held to be a matter within the sound discretion of the court (DeCabrera v *328 Cabrera-Rosete, 70 NY2d 879; Lefkowitz v Van Ess, 166 AD2d 556). Similarly, the cutting of fees claimed is a proper exercise of discretion as well (Matter of Ury, 108 AD2d 816, lv denied 64 NY2d 611).
In Matter of Rahmey v Blum (95 AD2d 294), the Court set out an “analytical framework” as a guide:
(a) Hours reasonably expended
The court suggested the following formula: (1) hours which reflect inefficiency or duplication of services should be discounted; (2) hours that are excessive, unnecessary or which reflect “padding” should be disallowed; (3) legal work should be differentiated from nonlegal work such as investigation, clerical work, the compilation of facts and other types of work which can be accomplished by nonlawyers who command lesser rates; (4) time spent in court should be differentiated from time expended for out-of-court services; and (5) the hours claimed should be weighed against the court’s own knowledge, experience and expertise as to the time required to complete similar activities.
(b) Reasonable hourly rate
The next step in determining attorney’s fees is to arrive at a reasonable hourly charge for each category of services rendered. The reasonable hourly rate should be based on the customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was represented (see, Johnson v Georgia Highway Express, 488 F2d 714). Thus, the hourly rate charged by an attorney will normally reflect the training, background, experience and skill of the individual attorney.
(c) Computation of fee
The third step is to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate.
(d) Adjustments to fee
The initial “lodestar” estimate, which is predicated on an objective assessment of reasonableness, may be reduced (or increased) by the court based on the following factors: “(1) the novelty and difficulty of the questions presented; (2) the skill requisite to perform the legal services properly; (3) the preclusion of other employment by the attorney due to acceptance of the case; (4) whether the fee is fixed or contingent; (5) time *329 limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the amount involved and the results obtained; (8) the undesirability of the case; and (9) awards in similar cases” (Matter of Rahmey v Blum, supra, at 303-304; Matter of Karp, 145 AD2d 208).
While many of the Federal circuits mandate the maintenance of contemporaneous time records as a prerequisite to recovery of fees (Hensley v Eckerhart, 461 US 424), the First Department, in Matter of Karp (supra, at 216), declined “to adopt such a hard and fast rule that reconstructed time records can never serve as a basis for compensation”. As the court said in Jobin Waterproofing Corp. v Riverbay Corp. (NYLJ, Nov. 4, 1992, at 25, col 5), a court should look at the big picture to see if the total time expended for each portion of the case was reasonable (see also, United States Football League v National Football League, 704 F Supp 474).
B. The Work Performed by Plaintiffs Counsel
Murray Schwartz has been in practice almost 48 years, holds an L.L.M., and is an accomplished litigator. When he was retained by plaintiff a contingent fee arrangement was entered into for 38% of any recovery obtained. He testified his hourly fee has been $385 for the past four years and is predicated upon his years in practice, experience both as a litigator and longtime specialist in the employment area, status in the profession, lecturer and writer in the field.[2]
His partner, Davida Perry, was admitted 10 years ago to the New York and Massachusetts Bars, and was employed by law firms in Boston until she returned to New York in 1991. She became a partner in her father’s firm in 1995 and testified that she has worked with him on the firm’s employment cases (approximately 60), including appeals before the First Department and Court of Appeals. Her hourly rate was said to be $250.
There was also testimony by an associate in their office, Alexander Jeffrey, a 1996 law school graduate awaiting admission to the Bar, who maintained and submitted contemporaneous time sheets commencing May 12, 1997 for services *330 performed in preparation for trial. Plaintiff is asking his hourly rate be fixed at $65.[3]
Work Done Prior to Mediation
The court’s observations made throughout these proceedings were that plaintiff received dedicated lawyering in the best tradition of our profession. Mr. Schwartz testified that he did not maintain actual time records until mediation commenced in April 1997 and prospects of a resolution faded. The court finds this explanation reasonable. In arriving at an estimate of the hours expended during this 3V2-year period, he testified that he had numerous conferences with his client, prepared an extensive summons and complaint and had five meetings with defense counsel in an attempt to resolve this matter.
In addition, preliminary conferences were held in October and November 1995 and a note of issue was filed in February 1996. Thereafter, defendant twice moved, unsuccessfully, to strike the case from the Trial Calendar.
Mediation
The failure of the numerous conferences to result in an amicable resolution led the parties to agree to mediation. There was at least one entire day spent in attendance thereat as well as numerous prior and subsequent discussions among counsel which continued virtually until the eve of trial. Plaintiff also prepared a settlement brochure to aid the mediator.
The Trial
After appearing several times in Justice Beverly Cohen’s Trial Assignment Part, a jury was selected by both partners over a three-day period: May 13, 14 and 15, 1997. At the same time, plaintiffs attorneys were preparing for trial by interviewing and subpoenaing potential witnesses and preparing an 18-page pretrial memorandum. The trial itself consumed seven full days and a total of 21 witnesses were called to testify. At the trial’s conclusion, plaintiff submitted a 44-page posttrial memorandum.
Following the jury’s unanimous" verdict, defendant moved to set it aside pursuant to CPLR 4404. Plaintiffs memorandum in opposition consisted of 60 pages. It was carefully researched *331 and well written. Mr. Schwartz, Ms. Perry and Alexander Jeffrey were all deeply involved in this endeavor.
The Attorney’s Fees Application
Finally, plaintiffs counsel also expended numerous hours preparing for this application and ultimately spent three days testifying before this court. As part of her claim for attorney’s fees, plaintiff contends that she is entitled to an award for the time spent by her counsel in making this application. Defendant contends that such an award would be improper and cites the case of Zauderer v Barcellona (130 Misc 2d 234) for the proposition that this jurisdiction does not permit such a recovery.
Otherwise referred to as a “fee on a fee” (Kumble v Windsor Plaza Co., 161 AD2d 259, lv denied 76 NY2d 709, appeal dismissed 76 NY2d 843), the propriety of including the hours spent on such services in calculating an attorney’s fees award, however, is not specifically addressed by Administrative Code § 8-502 (f) or any cases interpreting this section.
Before determining whether these hours should be included, the court notes that defendant’s citation to Zauderer (supra) is made without recognizing that the position taken by the court in that case is no longer the law with regard to this issue (see, Senfeld v I.S.T.A. Holding Co., 235 AD2d 345). In Senfeld (supra, at 345-346) and several cases prior thereto, the First Department overturned the holding in Zauderer when it stated that “it is now settled in this Department that a ‘fee on a fee’ * * * is recoverable under Real Property Law § 234” (see also, Troy v Oberlander, 181 AD2d 557; Kumble v Windsor Plaza Co., supra). In addition to awarding a “fee on a fee” under Real Property Law § 234, courts in this State have also found it appropriate to make such an award in cases where attorney’s fees were awarded pursuant to General Business Law § 396-u (7) (Podhorecki v Lauer’s Furniture Stores, 201 AD2d 947), and pursuant to CPLR article 86 (Jobin Waterproofing Corp. v Riverbay Corp., NYLJ, Nov. 4, 1992, at 25, col 5, supra).
The common thread running through all of the cases in which a “fee on a fee” was found permissible is that, as in the case at bar, the right to attorney’s fees was created by statute. Indeed the First Department, in discussing the propriety of awarding a “fee on a fee”, noted that “persuasive if not binding authority strongly suggests that statutes creating a right to attorney’s fees are served by its allowance” (Kumble v Windsor Plaza Co., supra; see also, Cruz v Local Union No. 3 of Intl. *332 Bhd. of Elec. Workers, 34 F3d 1148). Such an award also serves the purpose behind the New York City Human Rights Law (Administrative Code § 8-101 et seq.) of making the victim of discrimination whole by providing for reimbursement for the cost of prosecuting the action. Additionally, allowing recovery of fees for an attorney’s services in cases such as this assures representation to those who might otherwise be unable to proceed against corporate defendants who can afford time-consuming and costly proceedings.
Lastly, the court finds that “denying attorneys’ fees for time spent in obtaining them would ‘dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees.’ ” (Gagne v Maher, 594 F2d 336, 344, quoting Stanford Daily v Zurcher, 64 FRD 680, 684.) Therefore, a plaintiff entitled to attorney’s fees pursuant to Administrative Code § 8-502 (f) may also recover the value of the services provided by her attorney in making the application.
C. Additional Lodestar Considerations
Mr. Schwartz contended that from the time mediation was agreed to and commenced up to and through the trial all his energies and those of his partner and staff were dedicated to this case. As Justice Crane said so well in the case of Grutman Katz Greene & Humphrey v Goldman (NYLJ, June 11, 1996, at 27, col 2, at 29, col 5), “The difficulty of the issues, number of proceedings * * * and the ferocity of the adversaries required the highest level of responsibility that any attorney can bring to a representation of a client.” The aforesaid statement was equally applicable to the case at bar as the jury’s verdict herein demonstrated that the skill and energies of plaintiff’s counsel were properly utilized and channeled in her behalf.
Since another of the criteria to be employed by a court in fixing attorney’s fees in the typical quantum meruit application is the result obtained, the size of the verdict herein should be borne in mind. Again, while the court has considered all the factors delineated in Matter of Potts, Matter of Freeman and Rahmey (supra), it should be emphasized that this is not the usual adversarial quantum meruit situation between client and counsel. Rather, it must be viewed as added compensation to plaintiff mandated by the local legislative body.
D. The Final Calculations
In considering the respective roles of Ms. Perry and Mr. Schwartz, it was evident that they worked in tandem but not *333 in duplication. Together they orchestrated the very successful ultimate conclusion of a SVs-year endeavor for the plaintiffs benefit, and directed the efforts of several other staff persons, for none of whom, except Mr. Jeffrey, will they be reimbursed by defendant.
From January 1994 until the decision to submit the dispute to mediation, there were no contemporary time records. However, the court has determined that both counsel spent 89 “out of court” hours during that phase. From the time of mediation through the conclusion of the hearing on attorney’s fees, they spent a total of 758 hours which this court has deemed to be “in court” time since it was directed at quasi and purely judicial proceedings.
In arriving at the hourly rate to be applied to the aforesaid categories of time, this court considered that while the two partners labored together, there was a disparity in experience, years at the Bar, ability and participation in various aspects. Accordingly, the court determined that a weighted average reflecting such differences was appropriate in calculating the blended hourly rates to be applied in determining the amount of reasonable attorney’s fees.
For the out-of-court time expended by both during the first phase, the court fixes the rate of $222 per hour resulting in an award of $19,758. For the in-court time in the second phase, the court fixes the weighted average of the blended hourly rate at $291 for a total of $220,578. Finally, Mr. Jeffrey testified from contemporaneous records that he spent 428 hours solely on this case at $65 per hour for a total of $27,820. Since the court was impressed by the straightforward demeanor of this young man, there exists no reason to reduce it.
The total amount of attorney’s fees awarded to plaintiff, therefore, is $268,156. Notably, this award is not intended to supplant or interfere with the contractual agreement plaintiff has with her counsel but is the determination of “reasonable” attorney’s fees pursuant to Administrative Code § 8-502 (f).
II. PREVERDICT INTEREST
In addition to attorney’s fees, plaintiff also seeks statutory interest from December 1, 1991 to the date of verdict on her compensatory award of $650,000 and back pay award of $53,000.
Under New York law, the right to interest on an award prior to the verdict is sometimes authorized pursuant to CPLR 5001 (a) which states: “Interest shall be recovered upon a sum
*334 awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court’s discretion.” The date from which interest rims is to be set forth in the verdict or decision (CPLR 5001 [c]). Where a jury is discharged without determining the date, “the court upon motion shall fix the date” (CPLR 5001 [c]).
In interpreting CPLR 5001, courts of New York State have consistently held that preverdict interest is not available on an award of compensatory damages (see, Love v State of New York, 78 NY2d 540, citing 3d Preliminary Report of Advisory Comm on Practice and Procedure, 1959 NY Legis Doc No. 17, at 88; Miller v Santoro, 227 AD2d 534; see also, Chase v New York City Tr. Auth., 121 AD2d 425; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5001:2, at 358).[4] The rationale behind the rule is that compensatory damages are unliquidated (Zegman v State of New York, 99 Misc 2d 473), not easily quantified and not easily divided into specific time periods (see, McIntosh v Irving Trust Co., 873 F Supp 872).
In determining whether to award preverdict interest “[i]t is not the theory of the claim that controls” (Loeb v Teitelbaum, 112 Misc 2d 1039, 1041; see also, Alkinburgh v Glessing, 240 AD2d 904). While a portion of plaintiffs award for pain and suffering was premised upon her claims of gender discrimination and unlawful retaliation, this action is clearly one to recover damages for emotional pain and suffering. Any attempt to distinguish it from an award in a personal injury action would be nothing more than mere semantics and therefore unavailing (see, e.g., Raman v Carborundum Co., 31 AD2d 552 [preverdict interest not allowable on claim for personal injuries although recovery based on breach of implied warranty for fitness of use]).
Moreover, Administrative Code § 8-101 et seq. is silent as to whether a victim of discrimination has a right to preverdict interest. This brings to mind the maxim of statutory construction expressio unius est exclusio alterius. Inasmuch as the New York City Council promulgated the most comprehensive Human Rights Law in the Nation, it is clear that the Council’s *335 exclusion of preverdict interest was neither an oversight nor inadvertent (see, City of New York v New York Tel. Co., 108 AD2d 372). Therefore, the court must determine plaintiffs right to preverdict interest under the mandates of CPLR article 50 which precludes the recovery sought by plaintiff herein.
Indeed, this court could not find any court decision in this State in which preverdict interest on an award of compensatory damages was granted in a discrimination claim brought pursuant to either the State or City Human Rights Laws. The only case to address this issue is the Federal case of McIntosh v Irving Trust Co. (supra) in which the court held that a plaintiff who was retaliated against in violation of New York State’s Human Rights Law could not recover preverdict interest, pursuant to CPLR 5001, on his compensatory damages award.
The court agrees with the plaintiff that it would be an abuse of discretion not to award preverdict interest where it is authorized (see, Zicherman v Korean Air Lines Co., 814 F Supp 605). However, plaintiffs reliance on O’Quinn v New York Univ. Med. Ctr. (933 F Supp 341), the only case to hold that a plaintiff is entitled to preverdict interest on compensatory damages, is misplaced. O’Quinn is clearly distinguishable on the ground that plaintiffs claim of discrimination was brought solely under title VII of the Civil Rights Act of 1964 (42 USC § 2000e et seq.) and therefore not governed by the provisions of CPLR 5001 or the case law interpreting it (cf., McIntosh v Irving Trust Co., supra). Indeed, the court in O’Quinn acknowledged that New York State law precludes recovery of prejudgment interest on compensatory damage awards (O’Quinn v New York Univ. Med. Ctr., supra, at 345). As such, plaintiff is not entitled to preverdict interest on her compensatory damages award.[5]
While defendant contests plaintiffs right to preverdict interest on her award of compensatory damages, it concedes that it is within the court’s discretion to award preverdict interest with regard to her award of back pay (see, e.g., Boutique Indus, v New York State Div. of Human Rights, 228 AD2d 171; Tiffany & Co. v Smith, 224 AD2d 332). However, defendant contends that preverdict interest on plaintiffs back pay award should be denied because plaintiff was more than adequately compensated by the size of the compensatory and punitive damage *336 award she received and that such a further award of preverdict interest would only serve to further penalize the defendant.
Defendant’s argument presupposes that an award of interest constitutes an additional penalty that it must endure. In actuality, an award of interest is simply the cost to the defendant of having had the use of plaintiffs wages for the period of time it wrongfully withheld them (see, Love v State, 78 NY2d 540, supra; McIntosh v Irving Trust Co., 873 F Supp 872, supra). Additionally, an award of interest serves the purpose of making the victim of discrimination whole and the failure to award interest on back pay could be viewed as an abuse of discretion on the part of this court (see, McIntosh v Irving Trust Co., supra). Therefore, the court finds that plaintiff is entitled to recover preverdict interest at the statutory rate of 9% per annum on her back pay award of $53,000 which is to be applied annually (see, CPLR 5004; Matter of State Div. of Human Rights v Gissha White Plains Corp., 107 AD2d 750 [2d Dept 1985]).
Lastly, as plaintiffs entitlement to $53,000 in back pay did not accrue all at once, the court must determine whether to award interest upon each paycheck as it became due or upon the entire sum from a single reasonable intermediate date (see, CPLR 5001 [b]; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5001:4, at 359). In reviewing the extensive record in this case, there is no evidence establishing the frequency with which plaintiff received her paychecks (i.e., weekly, monthly). Absent such evidence, the court finds that awarding plaintiff interest from the single reasonable intermediate date of December 1, 1991 is appropriate (see, Falcone v EDO Corp., 141 AD2d 498; City of New York v Cole, 63 AD2d 558; Loeb v Teitelbaum, 112 Misc 2d 1039, supra).[6]
[Portions of opinion omitted for purposes of publication.]

. At the conclusion of the trial, defendant’s motion to set aside the jury’s verdict was granted to the extent that a new trial was ordered unless plaintiff accepted a reduced award of $3,703,000 (McIntyre v Manhattan Ford, Lincoln-Mercury, 175 Misc 2d 795 [Sup Ct, NY County 1997]). Plaintiff agreed to the reduction.

. In support of his hourly fee, Mr. Schwartz offered five affidavits from prominent counsel in the field who asserted that his fees were meritorious and comparable to others in the field.

. It was also claimed that two other associates and several law school interns worked on this case. However, plaintiff will not receive reimbursement for their time as they did not testify and no time sheets were submitted for them.

. A plaintiff also cannot recover interest on a punitive damage award “for any period prior to the date of the trial court’s decision” (Deborah S. v Diorio, 160 Misc 2d 210, 211 [App Term, 1st Dept 1994]).

. Murphy v Murphy, 109 AD2d 965, 967, n (3d Dept 1985) (court noted that the parties “correctly agree [d] that interest to the date of verdict on the award for intentional infliction of severe emotional distress is not available” under CPLR 5001).

. For the complete text of this decision including a fuller recitation of the facts, see McIntyre v Manhattan Ford, Lincoln-Mercury (NYLJ, Nov. 13, 1997, at 25, col 5).