356 F.3d 246
 Donna McGRATH, Robert Jinks, a/k/a Tanya Jinks, a/k/a Tanya Medina, and Norbert Lopez, a/k/a Tara Lopez, Plaintiffs-Appellees,
v.
TOYS "R" US, INC., Defendant-Appellant.
 Docket No. 02-9308.
 United States Court of Appeals, Second Circuit.
 Argued: September 22, 2003.
 Decided: January 23, 2004.
 
 Appeal from the United States District Court for the Eastern District of New York, Charles P. Sifton, J.
 H. Nicholas Goodman, Quirk & Bakalor, P.C., New York, New York, for Defendant-Appellant.
 Thomas D. Shanahan, Shanahan & Associates, P.C. (Anthony A. LoPresti, Davidson & LoPresti, L.L.P.; Marissa Goldfaden, on the brief), New York, New York, for Plaintiffs-Appellees.
 Before: FEINBERG and RAGGI, Circuit Judges, McKENNA, District Judge.[1]
 RAGGI, Circuit Judge.
 
 
 1
 Defendant-Appellant Toys "R" Us, Inc., appeals from a judgment entered on October 22, 2002, in the United States District Court for the Eastern District of New York (Charles P. Sifton, Judge), awarding $193,551 in attorney's fees to Plaintiffs-Appellees Donna McGrath, Robert Jinks (also known as "Tanya Jinks" and "Tanya Medina"), and Norbert Lopez (also known as "Tara Lopez") pursuant to New York City Administrative Code § 8-502(f). Plaintiffs were eligible for attorney's fees because they had prevailed at trial on a claim that Toys "R" Us had discriminated against them in a public accommodation based on gender and sexual orientation, in violation of local law. The parties' appellate dispute concerns the reasonableness of the district court's fee award given that the jury awarded each plaintiff only $1 in nominal damages. Because of ambiguities in New York law regarding the standards applicable to determining a reasonable fee award under Administrative Code § 8-502(f) in a case of nominal damages, we certify to the New York Court of Appeals questions pertaining to that issue. We retain jurisdiction so that, upon receipt of the New York Court's responses, we may rule on this appeal.
 
 I. Background
 
 2
 The following facts are drawn from the record and presented in the light most favorable to the plaintiffs. See Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 14 (2d Cir.2000).
 
 
 3
 On December 13, 2002, plaintiffs, three pre-operative transsexuals, visited a Toys "R" Us store in Brooklyn. Several store employees directed derogatory remarks towards plaintiffs regarding their transsexuality. Similar events occurred on December 20, 2000. On May 15, 2001, plaintiffs invoked federal diversity jurisdiction to file suit against Toys "R" Us in the United States District Court for the Eastern District of New York pursuant to New York City Administrative Code § 8-502.[2] Plaintiffs alleged that Toys "R" Us, through its employees, had denied them the advantages, privileges, and facilities of one of its stores because of plaintiffs' transsexuality, in violation of New York City Administrative Code § 8-107.4.[3] The complaint demanded actual damages in an amount "not less than $100,000 as to each plaintiff" and punitive damages in an amount "not less than $100,000 as to each plaintiff."[4] Following failed settlement negotiations, a ten-day trial ensued.
 
 
 4
 During summation, plaintiffs' counsel asked the jury to consider a compensatory damages award of several hundred thousand dollars: "[W]e ask you to award my clients compensatory damages. How much ... is your decision, one million, 500,000, 250,000, maybe less." Trial Trans. June 26, 2002 at 43. A punitive damages award of several million dollars was also suggested: "How much you should award in punitive damages .... this is not an easy decision, 100 million, probably not; 80 million, probably not; 60 million, maybe; 20 million, maybe." Id. at 51. On June 27, 2002, the jury returned a verdict in favor of plaintiffs, but awarded each only $1 in nominal damages and no punitive damages.
 
 
 5
 Thereafter, on July 17, 2002, plaintiffs petitioned the district court for attorney's fees pursuant to New York City Administrative Code § 8-502(f).[5] Plaintiffs, to support their petition, and defendant, to oppose it, relied upon case law applying fee provisions in federal civil rights statutes, such as 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988. These laws, like New York City Administrative Code § 8-502(f), permit fee awards only if the petitioner is a "prevailing party," and the requested fee is reasonable.[6] Given the parties' reliance upon federal law and noting that other courts had evaluated § 8-502(f) fee petitions by reference to parallel federal law, the district court ruled that it would rely upon federal standards in determining what, if any, attorney's fees to award plaintiffs. See McGrath v. Toys "R" Us, Inc., 01 Civ. 3071, 2002 U.S. Dist. LEXIS 22610, at *3 (E.D.N.Y. Oct. 16, 2002).
 
 
 6
 In its argument to the district court, Toys "R" Us conceded that plaintiffs were "prevailing parties"; however, it maintained that no fees should be awarded because the Supreme Court, applying federal law in Farrar v. Hobby, 506 U.S. 103, 115, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), had ruled that "when a plaintiff recovers only nominal damages ... the only reasonable fee is usually no fee at all." The district court acknowledged Farrar's holding, but concluded that plaintiffs were nevertheless entitled to attorney's fees because their lawsuit had served a significant public purpose by being the first to succeed at trial on a § 8-107.4(a) claim of unlawful discrimination against transsexuals in a public accommodation. Indeed, the district court noted that when plaintiffs filed their lawsuit, it was unresolved whether the public accommodation protections of § 8-107.4(a) even extended to transsexuals. See McGrath v. Toys "R" Us, Inc., 2002 U.S. Dist. LEXIS 22610, at *6-*7. Accordingly, the court awarded plaintiffs $193,551 in attorney's fees, id. at *17, prompting Toys "R" Us to file this timely appeal.
 
 II. Discussion
 
 7
 A. When to Certify a Question of State Law to the New York Court of Appeals
 
 
 8
 Federal courts sitting in diversity must apply the substantive law of the forum state on outcome determinative issues. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir.1994). We review de novo the district court's interpretation of state law. See J.C. v. Regional Sch. Dist. 10, Bd. of Educ., 278 F.3d 119, 123 (2d Cir.2002); see also Salve Regina Coll. v. Russell, 499 U.S. 225, 239, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).
 
 
 9
 Local Rule 0.27 of this court states that "where authorized by state law, this Court may certify to the highest court of a state an unsettled and significant question of state law that will control the outcome of a case pending before this Court." 2d Cir. R. § 0.27. Section 500.17 of the New York Rules of Court authorizes such certifications "whenever it appears to ... any United States Court of Appeals ... that determinative questions of New York law are involved in a cause pending before it for which there is no controlling precedent of the [New York] Court of Appeals." N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17(a); see Carvel Corp. v. Noonan, 350 F.3d 6, 14-15 (2d Cir.2003).
 
 
 10
 Despite our discretionary authority to certify, certification is an exceptional procedure, to which we resort only in appropriate circumstances. See Krohn v. New York City Police Dep't, 341 F.3d 177, 180 (2d Cir.2003). One such circumstance is where, as here, the "statute's plain language does not indicate the answer" to the question pending before the court, Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 51 (2d Cir.1992), and there is an "absence of authoritative state court interpretations of the state statute," Green v. Montgomery, 219 F.3d 52, 60 (2d Cir. 2000).
 
 
 11
 B. Does New York Apply the Farrar Standard to Fee Petitions in Cases of Nominal Damages?
 
 
 12
 As noted earlier, § 8-502(f) of the New York City Administrative Code states that a "court, in its discretion, may award the prevailing party costs and reasonable attorney's fees." As is clear from the text, the statute prescribes two conditions for a fee award: (1) the claimant must be a "prevailing party," and (2) the fees awarded must be "reasonable." On appeal, as before the district court, Toys "R" Us concedes plaintiffs' status as prevailing parties; it argues only that the amount of the district court's fee award was unreasonable.
 
 
 13
 In Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Supreme Court considered a fee award under 42 U.S.C. § 1988(b), which, like New York City Administrative Code § 8-502(f), imposes a "reasonableness" requirement. The Court stated that "`the most critical factor' in determining the reasonableness of a fee award `is the degree of success obtained.'" Farrar, 506 U.S. at 114, 113 S.Ct. 566 (quoting Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Accordingly, when a party succeeds in recovering only nominal damages, the Court explained that "the only reasonable fee is usually no fee at all." Id. at 115, 113 S.Ct. 566. If Farrar in fact controls review of a fee award pursuant to Administrative Code § 8-502(f), and if no exception applies to its conclusion that no fee award is generally warranted in a case of nominal damages, we would be obliged to conclude that the district court's fee award in this case was unreasonable.
 
 
 14
 It is not clear, however, whether New York has adopted the Farrar standard for determining reasonableness under § 8-502(f). State courts are not bound to interpret state laws in accordance with federal court interpretations of analogous federal statutes, although, of course, they may choose to do so. See, e.g., People v. Class, 67 N.Y.2d 431, 432, 503 N.Y.S.2d 313, 314, 494 N.E.2d 444 (1986) (declining to follow Supreme Court's interpretation of Fourth Amendment in interpreting state constitution's prohibition on unreasonable searches and seizures); see also Sargent v. Columbia Forest Prods., Inc., 75 F.3d 86, 90 (2d Cir.1996) (noting that state court is not bound by federal court's interpretation of state law).
 
 
 15
 A New York Supreme Court, noting the paucity of cases interpreting Administrative Code § 8-502(f),[7] has indicated that fee awards pursuant to that section should be adjudged by the Farrar standard. See Bell v. Helmsley, Index No. 111085/01, 2003 WL 21057630, at *1 (N.Y. Sup.Ct., Kings Cty., Mar. 27, 2003) ("In determining reasonable attorneys' fees in discrimination cases ... the City's Administrative Code and Federal Title VII standards are substantially identical."); see also Wilson v. Nomura Securities Intern. Inc., 01 Civ. 9290, 2002 WL 1560614, at *3 (S.D.N.Y. July 15, 2002) ("The standard guiding the determination of what constitutes a reasonable fee is the same under both the New York City Human Rights Law and other similar federal statutes."); Shannon v. Fireman's Fund Ins. Co., 156 F.Supp.2d 279, 298 (S.D.N.Y.2001) (same). Moreover, the Fourth Department, in interpreting various other fee provisions under New York law, has followed Farrar's rationale, holding that a fee award must be "reasonable in relation to the results obtained." Becker v. Empire of America Fed. Sav. Bank, 177 A.D.2d 958, 959, 577 N.Y.S.2d 1001, 1003 (4th Dep't 1991) (interpreting N.Y. C.P.L.R. § 909); accord Matter of Kunzelmann, 199 A.D.2d 1068, 1068, 605 N.Y.S.2d 606, 606 (4th Dep't 1993) (interpreting N.Y. Surr. Ct. Proc. Act § 2110).
 
 
 16
 On the other hand, on numerous occasions, New York courts, in evaluating the reasonableness of fees charged by attorneys to their own clients, have applied a more flexible standard than Farrar, indicating that the reasonableness of a fee award depends upon a variety of considerations, only one of which is the "results obtained." In re Freeman's Estate, 34 N.Y.2d 1, 9, 355 N.Y.S.2d 336, 341, 311 N.E.2d 480 (1974); accord, e.g., In re Linda R., 304 A.D.2d 832, 833, 757 N.Y.S.2d 862, 862 (2d Dep't 2003); In re Estate of Campagna, 267 A.D.2d 512, 514, 698 N.Y.S.2d 568, 569 (3d Dep't 1999).[8] These cases do not discuss the relative weight of various factors. Their silence on the matter thus leaves open the question whether the "results obtained" is the determinative factor, or merely a factor, in assessing the reasonableness of a particular fee award.
 
 
 17
 To be sure, the latter line of cases can be distinguished from the case at bar in that an attorney may be entitled to recover fees from a client even without achieving a successful result, see, e.g., 7 Am.Jur.2d, Attorneys at Law § 313, whereas a § 8-502(f) fee award is clearly unavailable to a non-prevailing party. Nevertheless, the First Department, at least, has indicated that the same multi-factor inquiry appropriately applies to all "attorney fee matters involving the discretion of the court" arising under New York law. Matter of Karp, 145 A.D.2d 208, 214-15, 537 N.Y.S.2d 510, 514-15 (1st Dep't 1989). Thus, there is some question whether under § 8-502(f), as under Farrar, the "degree of success obtained" is "the most critical factor" in determining the reasonableness of a fee award, such that a prevailing party recovering only nominal damages generally should receive no attorney's fees.
 
 
 18
 Were this the only unsettled issue of state law before us, we might well attempt to resolve it without certifying the question to the New York Court of Appeals. However, the applicability of the Farrar standard to a fee award under Administrative Code § 8-502(f) is just the first of a number of unsettled and significant state law questions relevant to this appeal.
 
 
 19
 C. Under New York Law, May Plaintiffs Receiving Only Nominal Damages Be Awarded Attorney's Fees Based on the Lawsuit's Service of Public Interests?
 
 
 20
 Plaintiffs submit that even though they recovered only nominal damages, the district court properly awarded attorney's fees because plaintiffs' success in pursuing a claim of discrimination against transsexuals in a public accommodation advanced a significant public interest.
 
 
 21
 This "public interest" exception to Farrar's conclusion that recovery of nominal damages generally warrants no fee award derives from Cabrera v. Jakabovitz, 24 F.3d 372 (2d Cir.1994). In Cabrera, a housing discrimination case arising under federal law, this court ruled that plaintiffs receiving nominal damages could, even after Farrar, recover attorney's fees because their litigation served the larger public purpose of alerting landlords that they could be held liable for discrimination if they employed real estate brokers who engaged in racial steering. Id. at 393. As we observed in Pino v. Locascio, 101 F.3d 235, 238-39 (2d Cir.1996), however, Cabrera applies not to every discrimination case, but only to those in which prevailing plaintiffs establish "ground-breaking conclusions of law."
 
 
 22
 The parties sharply dispute whether plaintiffs' suit satisfies this "groundbreaking" exception to Farrar. Defendant notes that several years before plaintiffs filed their lawsuit, the New York City Commission on Human Rights, a New York State Supreme Court, and a federal district court had all recognized that § 8-107 prohibited discrimination against transsexuals. See Arroyo v. New York City Health and Hosp. Corp., No. EM01120-04-12-89-DE, 1994 WL 932424, at *3-*4 (N.Y. City Comm'n on Human Rights Mar. 11, 1994) (applying § 8-107 to employment discrimination claim of pre-operative transsexual, but dismissing for insufficient evidence); see also Maffei v. Kolaeton Indus., Inc., 164 Misc.2d 547, 555-56, 626 N.Y.S.2d 391, 396 (N.Y.Sup. Ct., N.Y.Cty.1995) (holding that creation of a hostile work environment based upon an employee's transsexuality is a form of sex discrimination violative of § 8-107); accord Rentos v. Oce-Office Sys., 95 Civ. 7908, 1996 WL 737215, at *8-*9 (S.D.N.Y. Dec.24, 1996) (relying on Maffei to hold that plaintiff could maintain a transsexuality discrimination claim under New York City and State law). Based on this precedent, Toys "R" Us did not attempt to challenge the applicability of § 8-107 to plaintiffs' claim.
 
 
 23
 Plaintiffs submit that their lawsuit was nevertheless "groundbreaking" because it was the first to succeed on a claim of discrimination against transsexuals in a place of public accommodation, see N.Y. City Admin. Code § 8-107.4(a), whereas earlier cases had involved discrimination against transsexuals in the employment context, see id. at § 8.107.1(a). We cannot say whether New York would view this distinction as sufficiently "groundbreaking" to serve a significant public purpose because we do not know whether New York would (a) apply the Farrar presumption against a fee award to a plaintiff recovering only nominal damages, or (b) recognize a "public purpose" exception to that presumption. Certainly, plaintiffs fail to cite — and our research has not revealed — any New York cases that have relied on a "public purpose" theory to support a fee award to a party recovering nominal damages.
 
 
 24
 Our uncertainty whether New York would recognize a "public purpose" claim for attorney's fees is heightened by the Supreme Court's recent decision in Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), which expressly rejected another exception to Farrar widely recognized by Courts of Appeals, including this one: the "catalyst" theory. See 532 U.S. at 602 & n. 3, 121 S.Ct. 1835 (citing circuit cases); Marbley v. Bane, 57 F.3d 224, 234-35 (2d Cir.1995) (holding that "plaintiff whose lawsuit has been the catalyst in bringing about a goal sought in litigation, by threat of victory (and not by dint of nuisance ...), has prevailed for purposes of an attorney's fee claim, even though the result has not been reduced to a judgment, consent decree, or settlement"). Buckhannon ruled that only a plaintiff "awarded some relief by the court" that materially alters "the legal relationship of the parties" qualifies as a prevailing party entitled to attorney's fees. 532 U.S. at 603-04, 121 S.Ct. 1835 (internal quotation marks omitted); see also Roberson v. Giuliani, 346 F.3d 75, 81-82 (2d Cir.2003) (stating that any "judicially sanctioned change in the legal relationship of the parties" confers "prevailing party" status).
 
 
 25
 New York courts, notably the Appellate Division, First Department, have applied Buckhannon's reasoning to state law and similarly rejected the "catalyst" theory as a basis for holding a plaintiff to be a prevailing party. See Wittlinger v. Wing, 289 A.D.2d 171, 171, 735 N.Y.S.2d 382, 382 (1st Dep't 2001); Auguste v. Hammons, 285 A.D.2d 417, 418, 727 N.Y.S.2d 880, 880 (1st Dep't 2001). Neither New York's courts nor our own court has yet considered whether Buckhannon's singular focus on the particular judgments and orders entered in a case is relevant not only to determining a plaintiff's status as a prevailing party but also to measuring the degree of success achieved. We note that at least one federal district court has suggested that Buckhannon's logic extends to the reasonableness prong of the attorney's fee test. See Fish v. St. Cloud State University, 2001 WL 667778, at *4 n. 6 (D.Minn. Jun.12, 2001) (holding that although plaintiffs were prevailing parties, Buckhannon suggests that, in calculating a reasonable fee award, their counsel could not be credited with promotions that were not an explicit part of the final court-approved settlement agreement), aff'd, 295 F.3d 849 (8th Cir.2002).
 
 
 26
 We need not here decide what effect, if any, Buckhannon has on this court's recognition in Cabrera and Pino that a lawsuit's service of a significant public purpose, beyond the particular judgment entered or damages awarded, is relevant to measuring the degree of success achieved and the reasonableness of a fee award. Our task is to apply New York's law. We cannot, however, confidently predict whether New York courts will apply Buckhannon to their assessment of the reasonableness of attorney's fee awards, or whether they will even approve fee awards based on the "public purpose" served by litigation in which plaintiffs recover only nominal damages. Given these circumstances, we seek further guidance from the New York Court of Appeals.
 
 III. Conclusion
 
 27
 For the reasons stated, we hereby certify the following questions to the New York Court of Appeals:
 
 
 28
 1. In determining whether an award of attorney's fees is reasonable under New York City Administrative Code § 8-502(f), does New York apply the standards set forth in Farrar v. Hobby, 506 U.S. at 114-15, 113 S.Ct. 566, i.e., (a) that "the most critical factor ... is the degree of success," and (b) that when a party is awarded nominal damages, "the only reasonable fee is usually no fee at all"?
 
 
 29
 2. If the Farrar standard does not apply, what standard should a court use to determine what constitutes a reasonable fee award for a prevailing party who has received only nominal damages?
 
 
 30
 3. If the Farrar standard applies, does Administrative Code § 8-502(f) authorize a fee award to a prevailing plaintiff who receives only nominal damages but whose lawsuit served a significant public purpose?
 
 
 31
 4. If New York recognizes "service of a significant public purpose" as a factor warranting an attorney's fee award to a plaintiff recovering only nominal damages, would a plaintiff who is the first to secure a favorable jury verdict on a claim of unlawful discrimination against transsexuals in public accommodation, see N.Y. City Admin. Code § 8-107.4(a), be entitled to a fee award even though the law's prohibition of discrimination against transsexuals in employment, see id. § 8-107.1(a), has previously been recognized?
 
 
 32
 The Court of Appeals may expand these certified inquiries to address any further pertinent question of New York law involved in this appeal. This panel retains jurisdiction and will consider any issues that may remain on appeal once the New York Court of Appeals has either provided us with its guidance or declined certification.
 
 
 33
 It is therefore ORDERED that the Clerk of this court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of briefs, appendices, and the record filed in this court by the parties.
 
 IV. Certificate
 
 34
 The foregoing is hereby certified to the Court of Appeals of the State of New York, pursuant to 2d Cir. R. § 0.27 and N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17, as ordered by the United States Court of Appeals for the Second Circuit.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Lawrence M. McKenna, District Judge of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [2]
 Section 8-502 provides, in relevant part, that "any person claiming to be aggrieved by an unlawful discriminatory practice ... shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages, and for injunctive relief and such other remedies as may be appropriate." N.Y. City Admin. Code § 8-502(a)
 
 
 [3]
 Section 8-107.4 provides, in relevant part:
 It shall be an unlawful discriminatory practice for any person, being the ... manager,... agent or employee of any place or provider of public accommodation, because of the actual or perceived ... gender ... [or] sexual orientation ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, or, directly or indirectly, to make any declaration ... to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of ... gender ... [or] sexual orientation ... or that the patronage or custom of any person belonging to, purporting to be, or perceived to be, of any particular ... gender ... [or] sexual orientation ... is unwelcome, objectionable or not acceptable, desired or solicited.
 N.Y. City Admin. Code § 8-107.4(a).
 
 
 [4]
 Although the complaint also sought injunctive and declaratory relief, plaintiffs apparently did not pursue those remedies at trial
 
 
 [5]
 Section 8-502(f) provides: "In any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party costs and reasonable attorney's fees." N.Y. City Admin. Code § 8-502(f)
 
 
 [6]
 Title 42 U.S.C. § 1988(b) provides, in relevant part, that "the court, in its discretion, may allow the prevailing party" in various federal civil rights actions, "a reasonable attorney's fee as part of the costs." Similarly, 42 U.S.C. § 2000e-5(k) provides that in Title VII actions, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee."
 
 
 [7]
 Few reported cases have considered petitions for attorney's fees pursuant to § 8-502(f), and none of those cases involves a plaintiff who had been awarded only nominal damagesSee Bell v. Helmsley, Index No. 111085/01, 2003 WL 21057630 (N.Y. Sup.Ct., Kings Cty., Mar. 27, 2003) (awarding fees to plaintiff who obtained $11 million dollar verdict, although damage award was subsequently reduced to $554,000); Shannon v. Fireman's Fund Ins. Co., 156 F.Supp.2d 279 (S.D.N.Y.2001) (awarding fees to plaintiff who obtained $80,000 judgment, although it was subsequently reduced to $40,000); McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 176 Misc.2d 325, 672 N.Y.S.2d 230 (Sup.Ct., N.Y.Cty.1997) (awarding attorney's fees to plaintiff who had recovered $6,600,000 in a jury trial although the damages were subsequently reduced to $3,703,000); Wilson v. Nomura Securities Intern. Inc., 01 Civ. 9290, 2002 WL 1560614 (S.D.N.Y. July 15, 2002) (awarding fees to plaintiff who obtained judgment of $15,000).
 
 
 [8]
 Among the relevant factors identified are (1) the time, labor, and skill required to handle the case given the difficulty of the issues in dispute; (2) the attorney's experience, ability, and reputation; (3) the amount of money in dispute and the benefit received from the attorney's services; (4) fee awards in similar cases; (5) the contingency or certainty of compensation; (6) the results obtained; and (7) the responsibility involvedSee In re Freeman's Estate, 34 N.Y.2d at 9, 355 N.Y.S.2d at 341, 311 N.E.2d 480.