William P. SHANNON, Plaintiff,

v.

FIREMAN'S FUND INSURANCE COMPANY, Defendant.

No. 00 CIV. 1528(SAS).

United States District Court,
S.D. New York.

March 1, 2001.

Michael P. Graff, Michael Siskin, Kurzman Karelsen & Frank, LLP., New York City, for Plaintiff.

Lawrence Piekes, Wiggin & Dana, Stanford, CT, for Defendant.

### MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff, William P. Shannon, brought this action pursuant to the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 286, and the New York City Human Rights Law (the "City law"), N.Y.C. Admin. Code § 8–107, alleging that the defendant, Fireman's Fund Insurance Company ("Fireman's Fund"), unlaw-

fully terminated him because of his age.[1] The case was tried before a jury and on December 22, 2000, the jury returned a verdict in favor of Shannon.[2] During pretrial proceedings, the parties agreed that in the event Shannon prevailed at trial, the Court would determine the amount of back and/or front pay to which Shannon is entitled.[3]

Shannon seeks back pay from the date of his termination through the date of judgment, as well as front pay until he reaches the age of seventy. Fireman's Fund argues that Shannon is entitled to neither back nor front pay because Shannon failed to satisfy his duty to mitigate. Further, Fireman's Fund argues that an award of front pay would be unduly speculative, and at the very least, any front pay award should extend only until Shannon reaches the age of sixty-five. The parties have submitted a joint stipulation to the Court listing amounts to be used in calculating Shannon's award of back and/or front pay depending on the Court's assessment of the disputed legal issues. *See* 2/8/01 Damages Stipulation ("Stip.").

## I. DISCUSSION [4]

### A. Mitigation of Damages

■ A prevailing plaintiff must attempt to mitigate his damages "by using 'reasonable diligence in finding other suitable employment.'" *Dailey v. Societe Generale*, 108 F.3d 451, 455 (2d Cir.1997) (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982)). To satisfy his duty to mitigate, the plaintiff "need not go into another line of work, accept a demotion, or take a demeaning position." *Ford Motor*, 458 U.S. at 231, 102 S.Ct. 3057. However, if a plaintiff rejects an offer of substantially similar employment, he loses his right to pay after such rejection. *See Taylor v. Records*, No. 94 Civ. 7689, 1999 WL 124456, at *25 (S.D.N.Y. Mar. 8, 1999). It is the defendant's burden to prove that plaintiff failed to satisfy his duty to mitigate. *See Dailey*, 108 F.3d at 456. This may be done by showing that (1) suitable work existed and (2) the plaintiff did not make reasonable efforts to obtain it. *See id.* If the defendant can show that the plaintiff failed to make a reasonable effort to seek comparable employment, the defendant is relieved of its burden to prove that suitable work existed. *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53–55 (2d Cir.1998).

■ Fireman's Fund contends that Shannon failed to satisfy his duty to mitigate by not pursuing a conversation he had

---

1. Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

2. The jury awarded Shannon $80,000 as compensation for emotional suffering caused by the unlawful termination.

3. New York courts have ruled that all money damage awards under the NYSHRL are legal remedies. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1189 (2d Cir.1992) (citing *Murphy v. American Home Prods. Corp.*, 136 A.D.2d 229, 527 N.Y.S.2d 1, 2 (1988)). Thus, federal courts applying New York law have found that the question as to whether a plaintiff is entitled to an award of back or front pay should generally be decided by a jury. *See Epstein v. Kalvin–Miller Int'l, Inc.*, No. 96 Civ. 8158 (PKL), 2000 WL 1761052, at *1 (S.D.N.Y. Nov. 29, 2000).

4. The legal principles applicable to the issues concerning awards of front and back pay under the federal anti-discrimination statutes, such as Title VII and the ADEA, also apply to cases arising under State and City law. *See, e.g., Griffin v. William M. Mercer, Inc.*, No. 101146/96, 1998 WL 1050968, at *12 (N.Y.Sup. March 25, 1998) (applying legal principles derived from federal law to a case arising under NYSHRL).

with Tim Guiltinan,[5] a manager at AIG, about a possible job opportunity.[6] The circumstances surrounding this conversation were as follows. After Shannon was notified of his termination, he immediately appealed the decision to Michael Miller, the Executive Vice President of Fireman's Fund. *See* Trial Transcript ("Tr.") at 208. After confirming to Shannon that the decision was final, Miller, on his own initiative, contacted Guiltinan, who in turn called Shannon and informed him that there might be a job for him at AIG. *See id.* at 209; 5/10/00 Deposition of William P. Shannon ("Pl.Dep.") at 92. Although this conversation occurred after Shannon was notified of his termination, Shannon was still working at Fireman's Fund at the time.[7] *See* Tr. at 208.

During the conversation, Guiltinan told Shannon that he might be able to get him a job with an annual salary equal to what he was making at Fireman's Fund.[8] *See id.* at 209–10; Pl. Dep. at 92. The specifics of the position were not discussed nor was an actual offer ever made. *See* Tr. at 210–11; Pl. Dep. at 92. Shannon told Guiltinan that he was not interested in working for AIG. *See* Tr. at 211; Pl. Dep. at 92. Shannon had previously been fired from AIG in 1979[9] and had not heard one "good word" about AIG from any of his acquaintances employed there. *See* Tr. at 210–11, 263; Pl. Dep. at 92.

Shannon's decision not to follow up this conversation did not constitute a failure to satisfy his duty to mitigate. *First,* Guiltinan never offered a job to Shannon. The conversation was very general. According to Shannon, Guiltinan stated only that he "might have a job for [him]." Pl. Dep. at 92. By contrast, in *Taylor, supra,* the court limited a plaintiff's back pay award because she was *offered and in fact rejected* a substantially similar position at a higher salary five months after her termination. *See* 1999 WL 124456, at *25–26 (emphasis added).

*Second,* defendant has not shown that the position that Guiltinan described was substantially similar to Shannon's position at Fireman's Fund. In order to be substantially similar, "the new position must afford [the plaintiff] virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status as the former position." *Reilly v. Cisneros,* 835 F.Supp. 96, 100 (W.D.N.Y. 1993), *aff'd,* 44 F.3d 140 (2d Cir.1995). During their conversation, Guiltinan never provided Shannon with any details regarding the position at AIG.[10]

*Third,* under the circumstances, Shannon's decision not to follow up this conversation was not unreasonable. *See Gueye v. Air Afrique,* No. 92 Civ. 6625, 1995 WL 234711, at *9 (S.D.N.Y. Apr. 20, 1995) ("[T]he employer must establish that the

---

5. Many years earlier, Guiltinan and Shannon had been colleagues at William H. McGee & Co., Inc., which was acquired by Fireman's Fund in April of 1999.

6. Defendant does not contend that Shannon failed to satisfy his duty to mitigate damages in any respect other than by virtue of his refusal to consider the possible job opportunity at AIG.

7. Shannon was notified of his termination on September 8, 1999, but continued to work at Fireman's Fund until September 17, 1999.

He remained on Fireman's Fund's payroll until October 1, 1999. *See* Tr. at 206.

8. Shannon was making $75,000 at the time of his termination. *See* Tr. at 210.

9. Shannon was with an affiliate of AIG, Star Associates, when he was fired. *See* Transcript of 1/4/01 Hearing ("1/4/01 Tr.") at 64. Star Associates is now defunct. *See id.*

10. A description of the position cannot be found anywhere in the record.

course of conduct plaintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment.") (internal quotations and citations omitted); *Reilly*, 835 F.Supp. at 101 ("The basic question is whether a plaintiff's rejection was unreasonable."). Although the conversation with Guiltinan occurred after he was given notice, Shannon was still working at Fireman's Fund. Shannon testified that he "thought [he] was still employed [with Fireman's Fund] when [he] got the call", *see* Tr. at 208, and he still hoped that he would be retained by Fireman's Fund. *See* Pl. Dep. at 93–94. Further, Shannon had previously been fired from AIG and did not initiate the conversation with Guiltinan. *See id.* at 92. Under the law, Shannon was not required to pursue a job opportunity that, assuming it came to fruition, he more than likely would have found to be "demeaning." *See Ford Motor*, 458 U.S. at 231, 102 S.Ct. 3057.

In sum, Fireman's Fund has failed to sustain its burden of proving that Shannon failed to mitigate. As a result, plaintiff is entitled to back pay.[11]

**B. Back Pay**

■ When awarding back pay, a court should place a victim of unlawful discrimination in the position he would have been in absent the discrimination. *See EEOC v. Joint Apprenticeship Comm. of the Joint Ind. Bd. of the Elec. Ind.*, 186 F.3d 110, 123 (2d Cir.1999); *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 31 (2d Cir.1997). The Second Circuit has encouraged district judges "to fashion remedies designed to ensure that victims of age discrimination are made whole." *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727–28 (2d Cir.1984). A back pay award should "not

[be] designed to punish an employer or provide a windfall to the employee." *Meling v. St. Francis Coll.*, 3 F.Supp.2d 267, 275 (E.D.N.Y.1998) (citation omitted).

With these principles in mind, I now turn to the issues in dispute: (1) whether Shannon is entitled to prejudgment interest; (2) whether the award should include unemployment insurance benefits; and (3) whether the award should include compensation for unused paid leave.

**1. Prejudgment Interest**

■ An award of prejudgment interest is designed "to prevent an employer from attempting 'to enjoy an interest-free loan for as long as it can delay paying out back wages.'" *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir.1993) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153–54 (2d Cir.1992)). While the decision to award prejudgment interest is left to the discretion of the district courts, the Second Circuit has stated that "[t]o the extent … that damages awarded to the plaintiff represent compensation for lost wages, it is ordinarily an abuse of discretion not to include pre-judgment interest." *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998) (internal quotations and citation omitted). Fireman's Fund does not contest Shannon's entitlement to prejudgment interest on the portion of the back pay award representing lost wages.

■ However, Fireman's Fund asserts that prejudgment interest should not be awarded with respect to the fringe benefit component of the back pay award. The fringe benefit component consists of lost pension benefits, 401(k) benefits, health insurance benefits and basic life insurance. To determine whether an

---

11. Whether or not Shannon is entitled to front pay is dependent on an evaluation of additional factors, *see infra*, Part I.C.

award of prejudgment interest is appropriate, the Court must consider a variety of factors including "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co., Inc., v. Local Union No. 3*, 955 F.2d 831, 834 (2d Cir.1992) (citations omitted). In this case, adding prejudgment interest to the fringe benefit component of the back pay award would exceed the "make whole" objective of back pay. Thus, an award of prejudgment interest with respect to these benefits is inappropriate. *See generally, Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 375–76 (2d Cir.2000) (specifically noting that the court should decide whether it is appropriate to award prejudgment interest to portions of a back pay award other than lost wages).

### a. The Proper Rate

▮▮▮▮ What rate of prejudgment interest to apply is generally a matter committed to the court's discretion. *See Rao v. New York City Health and Hosps. Corp.*, 882 F.Supp. 321, 327 (S.D.N.Y. 1995). Because this action was brought pursuant to State and City law, Shannon asserts that the 9% rate provided by N.Y. C.P.L.R. § 5004 should apply.[12] Section 5004 of the C.P.L.R. states: "Interest shall be at the rate of nine per centum, except where otherwise provided by statute." New York courts have consistently applied

the 9% rate to back pay awarded to plaintiffs in actions brought under the NYSHRL. *See, e.g., New York State Div. of Human Rights v. Marcus Garvey Nursing Home*, 249 A.D.2d 549, 672 N.Y.S.2d 130, 131 (1998); *Burke v. Crosson*, 213 A.D.2d 963, 623 N.Y.S.2d 969, 971 (1995); *State Div. of Human Rights v. Gissha White Plains Corp.*, 107 A.D.2d 750, 484 N.Y.S.2d 603, 604 (1985); *McIntyre v. Manhattan Ford, Lincoln–Mercury Inc.*, 176 Misc.2d 325, 672 N.Y.S.2d 230, 236–37 (1997). Fireman's Fund has not objected to this rate.[13] *See Miner v. City of Glens Falls*, No. 89–CV–918, 1992 WL 349668, at *14 (N.D.N.Y. Nov. 12, 1992), *aff'd*, 999 F.2d 655 (2d Cir.1993) ("[A]bsent an agreement to the contrary, the 9% rate [set by N.Y. C.P.L.R. § 5004] would appear to be appropriate."); *Malarkey v. Texaco, Inc.*, (S.D.N.Y 1992) (applying the New York statutory rate apparently without objection from the defendant). Accordingly, a 9% rate of prejudgment interest shall be applied to the lost wages component of Shannon's back pay award.

### 2. Unemployment Benefits

The Second Circuit has explicitly stated that the decision whether or not to deduct benefits received from a collateral source, such as unemployment benefits, from an award of back pay rests in the sound discretion of the district court. *See Dailey*, 108 F.3d at 460. However, the Second Circuit has addressed the issue in dicta, noting that although

**12.** Courts in this Circuit have consistently applied the United States fifty-two week treasury bill rate, referred to in 28 U.S.C. § 1961, to awards of back pay under Title VII. *See, e.g., Ware v. ABB Air Preheater, Inc.*, No. 91–CV–37S, 1995 WL 574464, at *9–10 (W.D.N.Y. 1995); *Rao*, 882 F.Supp. at 327, 329 (S.D.N.Y.1995); *McIntosh v. Irving Trust Co.*, 873 F.Supp. 872, 882–84 (S.D.N.Y.1995);

*Frank v. Relin*, 851 F.Supp. 87, 91 (W.D.N.Y. 1994). However, unlike the plaintiffs in these cases, Shannon has not asserted a claim under federal law.

**13.** In its submissions to the Court Fireman's Fund did not indicate what rate it deemed appropriate.

collateral source payments do represent an additional benefit to the plaintiff, we note a sister circuit's view that "[a]s between the employer, whose action caused the discharge, and the employee, who may have experienced other non-compensable losses, it is fitting that the burden be placed on the employer."

*Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 258 (2d Cir.1991) (quoting *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 795 (3rd Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986)). A majority of the courts in this circuit have relied on this reasoning in not deducting unemployment benefits from back pay awards. *See, e.g., Meling*, 3 F.Supp.2d at 275–276; *Perez v. Manhattan Jeep Eagle*, No. 92 Civ. 9521, 1997 WL 76519, at *1–2 (S.D.N.Y. Feb. 24, 1997); *Iannone v. Frederic R. Harris, Inc.*, 941 F.Supp. 403, 411–413 (S.D.N.Y.1996); *Azar v. TGI Friday's, Inc.*, 945 F.Supp. 485, 500–01 (E.D.N.Y.1996); *Brooks v. Fonda–Fultonville Cent. Sch. Dist.*, 938 F.Supp. 1094, 1109–10 (N.D.N.Y.1996).

 Fireman's Fund argues that Shannon will receive a "windfall" if the Court does not offset the back pay award by the amount of unemployment benefits Shannon received after his termination. However, because unemployment benefits are paid by a state agency rather than by Fireman's Fund directly, either Shannon or Fireman's fund will receive this "wind-fall" no matter how the benefits are treated.[14] In short, fairness dictates that the "windfall" be awarded to the victim of the discrimination rather than the perpetrator. *See Meling*, 3 F.Supp.2d at 275; *Iannone*, 941 F.Supp. at 412–413. Accordingly, the unemployment benefits received by Shannon shall not be deducted from his back pay award.

### 3. Paid Leave

 Employees at Fireman's Fund accrue a certain amount of paid leave each year. However, employees are not allowed to carry over any unused time into the following year and Fireman's Fund does not compensate an employee for time not used in a given year. Therefore, the most Shannon lost was the value of the paid leave to which he would have been entitled as an employee at Fireman's Fund, but which he was not entitled to at his subsequent employment. *See Bonura v. Chase Manhattan Bank, N.A.*, 629 F.Supp. 353, 358 (S.D.N.Y.1986); *see also Rivera v. Baccarat, Inc.*, 34 F.Supp.2d 870, 876 (E.D.N.Y.1999) (calculating the lost leave time by taking the difference between the paid leave to which plaintiff would have been entitled at her old job and the amount she received at her subsequent jobs and multiplying the difference by the value of each day of leave). Because Shannon has not been employed since his termination at Fireman's Fund,

---

**14.** Fireman's Fund also argues that because it contributes to the general unemployment insurance trust fund from which unemployment benefits are paid such benefits cannot be considered to derive from a "truly" collateral source. This argument is unavailing. *See NLRB v. Gullett Gin Co.*, 340 U.S. 361, 364, 71 S.Ct. 337, 95 L.Ed. 337 (1951) (in rejecting the argument that because the employer contributed to the state's unemployment compensation fund the unemployment compensation amounted to a direct rather than a collateral benefit, the Court noted that "payments to the employees were not made to discharge any liability or obligation of [the employer], but to carry out a policy of social betterment for the benefit of the entire state."). In both *Stratton v. Dep't for the Aging*, 922 F.Supp. 857, 866 (S.D.N.Y.1996) and *Williams v. Sec'y of Navy*, 853 F.Supp. 66, 72 (E.D.N.Y.1994), cases where the courts deducted unemployment benefits from back pay awards, the defendants, both public agencies, effectively paid the unemployment compensation. That is not the case here.

he has not established a compensable loss with respect to paid leave.

### 4. Calculation

Using the figures provided by the parties and in accordance with the above rulings, Shannon's back pay award shall consist of:

| | | |
|---|---|---|
| 1. | Lost wages: | $101,916.77 |
| 2. | Pension: | $ 17,132.99 |
| 3. | 401(K): | $ 5,264.10 |
| 4. | Health Insurance Benefits: | $ 952.43 |
| 5. | Basic Life Insurance Benefits: | $ 212.00 |
| | **TOTAL:** | $125,478.29 |

Offset by:

| | | |
|---|---|---|
| 1. | Severance Payment: | $ 57,847.20 |
| | **TOTAL BACK PAY AWARD:** | **$ 67,631.09** |

### C. Front Pay [15]

■ An award of front pay is exclusively within a court's discretion. *See Banks v. Travelers Cos.*, 180 F.3d 358, 364 (2d Cir.1999); *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1257—58 (2d Cir.1987). In deciding whether an award of front pay is appropriate, a court should consider (1) whether "reinstatement [is] either impossible or impracticable" (2) whether the plaintiff has a reasonable prospect of obtaining comparable employment; and (3) whether the calculation of front pay would involve "undue speculation." *Whittlesey*, 742 F.2d at 729; *see also Padilla v. Metro–North Commuter R.R.*, 92 F.3d 117, 125–26 (2d Cir.1996) ("A front pay award serves a necessary role in making victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alterna-tive employment.") (internal quotations and citation omitted); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1182 (2d Cir.1996) (in order to qualify for front pay a plaintiff must have been diligent in seeking comparable employment).

■ Fireman's Fund acknowledges that reinstatement is not an option in this case. Fireman's Fund argues that front pay is unwarranted because Shannon has not shown that he has no reasonable prospect of obtaining comparable employment. I disagree.

Shannon has testified to the steps he has and continues to take in order to find a job. *See* 1/4/01 Tr. at 45–46. Shannon has attended job fairs, talked to employment agencies and recruiting firms, and sent numerous letters to companies via the internet. *See id.* Other than the decision not to follow up the conversation with Guiltinan, Fireman's Fund does not dispute that Shannon has been diligent in his job search. Despite Shannon's efforts and some words of encouragement from the recruiting firms, Shannon has been unable to find a job. In light of this and the fact that Shannon is sixty-three years old, the prospect of Shannon finding a job comparable to the one he had at Fireman's Fund is less than likely. *Cf. Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir.), *cert. denied,* 530 U.S. 1261, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000) (noting that it is important for a court reviewing an ADEA case to bear in mind that at the time of the ADEA's enactment Congress found that older workers were disadvantaged in retaining employment and regaining it after being discharged). Accordingly, an award of front pay is appropriate in this case.

---

**15.** For the same reasons set forth in Parts I.B.3, *supra*, Shannon's front pay award shall *not* include damages for unused paid leave.

### 1. The Extent of the Front Pay Award

Shannon seeks an award of front pay through the age of seventy. Fireman's Fund argues that any award of front pay should extend only until Shannon reaches age sixty-five. I agree with Fireman's Fund.

Although Shannon has testified that he intended to work at Fireman's Fund until age seventy, see 1/4/01 Tr. at 43, prior to his termination Shannon had given no thought as to when he would retire. See id. at 42. Immediately upon his termination, however, Shannon told Edward Helfers, Shannon's manager, and Miller, that he wanted to work until he was at least sixty-five years old. See id. at 56–57. At the time of the termination, Shannon also indicated to his sister that all he wanted was to work three more years so he could retire comfortably.[16] See id. at 58.

Even if Shannon intended to work until he was seventy, which is not at all clear from the record, any front pay award extending past age sixty-five would be unduly speculative. See Rivera, 34 F.Supp.2d at 878 ("Under no circumstances can [an] award [of front pay] be based on undue speculation."). Further, Shannon becomes eligible for his full pension when he turns sixty-five. See Padilla, 92 F.3d at 126 (affirming an award of front pay award through the time plaintiff became eligible to receive his full pension); Buckley v. Reynolds Metals Co., 690 F.Supp. 211, 216 (S.D.N.Y.1988) (awarding front pay until plaintiff "reached the regular retirement age of sixty-five"). Accordingly, an award of front pay through age sixty-five is appropriate in this case.

### 2. Life Insurance

Fireman's Fund provides each of its employees with a $50,000 group term life insurance policy through the Hartford Insurance Company ("Hartford"). After his termination, Shannon secured a continuation of that policy for $400 a year. See Transcript of 1/25/01 ("1/25/01 Tr.") at 3. On July 7, 2001, Shannon will no longer be eligible for this term life policy. See id. Shannon asserts that despite searching for a comparable replacement insurance, the only life insurance policy he has been able to obtain is a $50,000 whole life insurance policy from Hartford. This policy has an annual premium of $3,147.22. Shannon requests that this Court grant him damages for lost life insurance benefits equal to the amount of the annual premium for this policy times the number of years the Court determines he would have worked had he not been unlawfully terminated.[17]

Shannon's assertion that he could not obtain a comparable term life policy is not based on any evidence in the record. While Shannon argues that his heart condition prevents him from passing the physicals required by those companies offering individual term life policies, see 1/25/01 Tr. at 3–5, he has failed to submit any evidence to this effect.[18] Therefore, Shannon's request for lost life insurance benefits is denied.

---

16. Shannon was terminated a couple of months after he turned sixty-two.

17. The Court has determined that Shannon would have worked until age sixty-five.

18. In addition, the whole life policy is more valuable than the term life policy offered by Fireman's Fund. Unlike the term life policy, the whole life policy has a cash value which may be redeemed at any time. See 1/25/01 Tr. at 4. Accordingly, awarding Shannon the damages he seeks would go beyond making him "whole."

### 3. Social Security Contributions

 Lost social security benefits incurred as a result of an unlawful termination may be included in a front pay award when the damages are proven with a reasonable certainty. *See Miner*, 1992 WL 349668, at *9–10. During a telephone conference held on February 16, 2001, the Court directed Shannon to submit calculations delineating the amount of lost social security benefits he incurred as a result of his unlawful termination. Upon review of the calculations, I find that Shannon is entitled to $3,533.70 in lost social security benefits.

Shannon provided the Court with calculations of his current estimated monthly retirement benefits, and his estimated monthly retirement benefits if he had worked at Fireman's Fund until age sixty-five. *See* 2/22/01 Letter and Spreadsheets from Michael Siskin, Attorney for the Plaintiff ("2/22/01 letter"). These calculations were done in accordance with a worksheet published by the Social Security Administration. *See id.; see also* "How Your Retirement Benefit is Figured", attached as Ex. B to Plaintiff's 1/17/01 Letter Brief Regarding Damages. The difference in the monthly benefits was then multiplied by the number of months in Shannon's future life expectancy, as set forth in New York's Pattern Jury Instructions. *See* 2/22/01 Letter; *see also* 1 N.Y. PJI3d 1402–06, Civil, App. A (2001). The total loss of monthly benefits was then reduced to present value. *See* 2/22/01 Letter.

*Summary Chart for Shannon's Lost Social Security Benefits:*

| Current Estimated Monthly Benefit | Estimated Monthly Benefit (Retired at 65) | Difference or Loss Per Month | Life Expectancy For a 63–64 Male | Total Loss | Present Value For Total Loss |
| --- | --- | --- | --- | --- | --- |
| $1,507.41 | $1,535.82 | $28.41 | 17.3 or 191 months | $5,426.31 | $3,533.70 |

### 4. Calculation [19]

Using the figures provided by the parties and in accordance with the above rulings, Shannon's front pay award shall consist of:

1. Wages: $114,003.35
2. Pension: $ 43,521.41
3. 401(K): $ 6,840.20
4. Health Insurance Benefits: $ 4,756.15
5. Lost Social Security Benefits: $ 3,533.70

**TOTAL FRONT PAY AWARD:** **$172,654.81**

## II. CONCLUSION

Based on the foregoing, Shannon is entitled to $240,285.90 in back and front pay. The parties shall submit a proposed judgment on notice within five business days of the date of this Memorandum Opinion and Order.[20]

SO ORDERED.

---

19. All amounts have been reduced to present value. *See* Stip. at 3.

20. On February 2, 2001, Fireman's Fund moved for an order pursuant to Fed.R.Civ.P. 62(b), to stay any proceedings to enforce the judgment in this matter. While Shannon

does not oppose such a stay, Shannon requests that Fireman's Fund be required to post a bond as a condition of the stay. *See* Plaintiff's 2/9/01 Letter Response to Defendant's Motion to Stay Execution of the Judgment at 1. The parties shall meet and confer as to the amount of a bond. If they cannot agree, they may seek the assistance of the Court.