Doris. TSE, Plaintiff,

v.

**NEW YORK UNIVERSITY, Defendant.**

**10-CV-7207 (DAB)**

United States District Court, S.D. New York.

Signed June 6, 2016

Doris Tse, Riverdale, NY, pro se.

Effie Aquila Patrick, Maya Murphy, P.C., Westport, CT, for Plaintiff.

Edward Cerasia, II, Cerasia & Del Rey-Cone LLP, New York, NY, for Defendant.

## MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge

On May 12, 2016, this Court held a Final Pretrial Conference in this matter. At the conference, Defendant New York University ("NYU"), through Defense Counsel Edward Cerasia, argued that Plaintiff Doris Tse's receipt of long-term disability ("LTD") benefits and Social Security Disability Insurance ("SSDI") benefits precludes as a matter of law a damages award of front and back pay should Plaintiff prevail at trial. Based on Mr. Cerasia's representation that recent case law was dispositive on the issue, the Court set a briefing schedule for a pretrial motion in limine. Accordingly, on May 20, 2016, Defendant filed the instant Motion in Limine to Exclude Economic Damages, Reinstatement and Any Argument That Plaintiff Was Qualified for Another Job ("Motion in Limine"). Pro se Plaintiff Dr. Tse filed an Opposition on May 24, 2016. For the reasons set forth below, Defendant's Motion is DENIED in all respects.

## I. INTRODUCTION

For the purpose of this Order, familiarity with the underlying facts of the case are assumed. As is relevant to this Motion, Dr. Tse was an employee of NYU from 1994 until April 4, 2011. Beginning in 1999, Dr. Tse served as the Director of the Flow Cytometry Core ("Core") within NYU's Center for AIDS Research ("CFAR"). In 1997, Plaintiff developed severe acute arthritis, and in 1999, she was diagnosed with Lupus. On April 1, 2010, Dr. Tse was removed from her position as Core Director. CFAR continued to fund her salary through May 31, 2010. Dr. Tse asserts that

after she was removed from the position of Core Director, NYU failed to provide reasonable accommodations to her which would have permitted her to continue her job functions at NYU.[1]

It is undisputed that in May 2010, Dr. Tse applied for LTD benefits seeking sixty-five percent of her salary. In August 2010, Dr. Tse met with Dr. Martin Blaser, the Chair of the Department of Medicine, and Reginald Odom, NYU's Vice President for Employee and Labor Relations, during which Dr. Blazer and Mr. Odom discussed her seeking one hundred percent of her salary from LTD benefits. NYU continued to pay one hundred percent of Dr. Tse's salary through April 4, 2011. Dr. Tse began receiving LTD benefits on April 5, 2011. Dr. Tse began receiving SSDI benefits in October 2011. Dr. Tse represents that she continues to receive Social Security benefits, which transitioned to Social Security Retirement benefits when she reached the age of 65.

Based on a spreadsheet produced to Defense Counsel and the Court during the May 12 conference, as of June 30, 2016, Dr. Tse will have received $195,079.00 in LTD benefits.[2] She asserts that her salary and fringe benefits during that same period would have been $742,437.00. Additionally, Dr. Tse submitted documentation that she currently receives $2,146.30 per month in Social Security Retirement benefits. (See ECF No. 114.)

In its Motion in Limine, NYU argues that even if it were found liable at trial for violations of the ADA, NYSHRL, and NYCHRL for failure to provide reasonable accommodations, Dr. Tse is not entitled to back pay, reinstatement, or front pay. NYU argues that the Social Security Administration's ("SSA") determination that Dr. Tse was "totally disabled," and therefore eligible for SSDI, conclusively demonstrates that, from the time of her termination through the present, Dr. Tse could not engage in any gainful employment at NYU or elsewhere. Therefore, NYU argues, Dr. Tse cannot be reinstated because she would be unable to perform the essential job duties.

Similarly, NYU asserts that back pay and front pay are not available when a plaintiff cannot work due to a disability instead receives disability benefits.[3] In addition, at the Final Pretrial Conference, the Court understood NYU to be arguing that even if Dr. Tse were entitled to front or back pay, her damages would be reduced, in whole or in part, by the amount of money that she received and continues to receive through LTD, SSDI or Social Security Retirement benefits.

Finally, unrelated to the issue of damages, NYU argues that because the SSA determined that Dr. Tse could not work, NYU had no duty to accommodate her. Therefore, NYU seeks to prevent Dr. Tse

---

1. Dr. Tse also asserted that she was discriminated against and denied reasonable accommodations while serving as Core Director. The only remaining claims after summary judgment are Dr. Tse's reasonable accommodation claims for the period June 1, 2010 to April 4, 2011 under the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). (See Opinion granting in part and denying in part Motion for Summary Judgment, Sept. 19, 2013 ("MSJ Opinion"), ECF No. 65).

2. It is unclear whether Dr. Tse's calculation includes both LTD and Social Security benefits, or only LTD benefits.

3. NYU does not distinguish between SSDI and LTD benefits for the purpose of its argument. Therefore, when the Court refers to "disability benefits" generally, it refers to both LTD and SSDI benefits.

from arguing at trial that there was a vacant position at NYU that could have been offered to her as an accommodation.[4] The Court first addresses the question of whether the SSA determination precludes Dr. Tse's reasonable accommodation claim, then turns to the related remedy questions.

## II. DISCUSSION

### A. Reasonable Accommodation Claim

■ The Social Security Act provides Social Security Disability Insurance benefits to people with disabilities who due to their disabilities are "unable to do [their] previous work" and "cannot considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d) (2) (A). The Americans with Disabilities Act prohibits discrimination based on disability with respect to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination includes the failure to make "reasonable accommodations" unless "the accommodation would impose an undue hardship" on the employer, as well as "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such [employer] to make reasonable accommodation." 42 U.S.C. § 12112 (b) (5) (a)-(b). To succeed on a reasonable accommodation claim, a plaintiff must prove:

(1) Plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 97 (2d Cir.2009) (citation omitted).

■ NYU's argument draws on the apparent tension between the requirement that a person be unable to work as a condition of the award of SSDI benefits and the ADA's premise that a disabled person may continue to work with reasonable accommodations. NYU argues that because the SSA determination that Dr. Tse was eligible for SSDX benefits necessitated a finding that she could not engage in any "substantial gainful work," she could not work even with reasonable accommodations, and thus NYU was relieved of any obligation to provide reasonable accommodations.

Defendant NYU made almost identical arguments on summary judgment and in its Motion for Reconsideration of the summary judgment decision, asserting that Plaintiff was estopped from raising her disability discrimination claims, that she should be precluded from arguing that she was qualified for any position at NYU, and that she had suffered no economic damages because she had received disability benefits. The Court rejected the arguments there, and does so again here for the same reasons. (See MSJ Opinion 20-22; Order denying Motion for Reconsideration 3-4 (ECF No. 72).

---

4. The Court notes that this argument goes beyond the scope of the motion proposed by Defense Counsel at the Final Pretrial Conference because it goes to liability for the reasonable accommodations claim, rather than to damages. Nevertheless, because it relates to the evidence and arguments that Dr. Tse may present at trial, the Court finds it appropriate to rule on this part of the Motion in Limine as well.

As noted previously, the Supreme Court has plainly rejected this same estoppel argument, a decision which has been reaffirmed repeatedly by the Second Circuit. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); see, e.g., Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 46 (2d Cir.2015); DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 102–03 (2d Cir.2010). In Cleveland, the Supreme Court held that "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim," and rejected the contention that an SSDI application created a strong presumption against success under the ADA. Id. at 797, 119 S.Ct. 1597. The Court explained that

> [W]hen the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI.... The result is that an ADA suit claiming that the plaintiff can perform her job with reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) without it.

Id. at 803, 119 S.Ct. 1597 (emphasis in original). Furthermore, as Dr. Tse argues in her Opposition and as the Cleveland Court highlighted, "the SSA sometimes grants SSDI benefits to individuals who not only can work, but are working." Id. at 805, 119 S.Ct. 1597.

Though Cleveland requires Dr. Tse to provide a "sufficient explanation," for the apparent contradiction between her SSDI benefit claim and her ADA claim, the Court previously held that she had advanced an explanation sufficient to overcome summary judgment—namely, that she was consistently able to perform her essential job functions with the aid of laboratory assistance while serving as Core Director, and only became unable to do her job after being removed from the Core Director position and losing the accommodations that NYU had provided previously. The Court sees no reason to disturb that ruling now.[5]

Further, Dr. Tse argued at the Final Pretrial Conference that she was and is able to perform many of her job duties without any accommodations, including developing research experiments, writing grants, collecting and analyzing data, and writing reports and articles, and that she would be able to fill another position if NYU provided one as an accommodation. (Pretrial Conf. Tr., May 12, 2016, 15:9-16:1, 16:25-17:19, 20:20-21:11, 23:9-17.)[6] Of course, Dr. Tse must prove these facts, and that such an accommodation would be reasonable, in order to succeed at trial. However, Defendant's argument that the SSA determination is conclusive as to Dr. Tse's ability to work, and thus that Dr. Tse should be precluded from presenting evidence about vacant positions which she could have filled, is without any basis in the law or the facts before this Court.

Finally, the Court understands that Dr. Tse will seek to prove at trial that NYU made no offers of reasonable accommodations during this period other than to assist Dr. Tse in her application for LTD benefits. (Pretrial Conf. Tr. 15:1-14.) If the Court accepted NYU's argument that Dr.

---

**5.** The Court admonishes Defense Counsel for attempting to relitigate issues already addressed and disposed of previously in this litigation, and for neglecting to address contrary Supreme Court and Second Circuit authority.

**6.** There appears to be no dispute that NYU did not offer Dr. Tse such a position.

Tse's pursuit and receipt of disability benefits precluded her ADA reasonable accommodation claim, then NYU, and other employers moving forward, would be essentially immune from liability for pushing disabled employees out onto LTD or SSDI, rather than providing reasonable accommodations, so long as those workers later applied for disability benefits. This result would be most unjust. See Solomon v. Vilsack, 628 F.3d 555, 564 (D.C.Cir.2010) (rejecting presumption that recipients of disability benefits were precluded from asserting discrimination claims because it would "grant immunity to [plaintiff]'s employer precisely because it succeeded in forcing [plaintiff] to accept disability retirement benefits by denying her accommodations to which she was legally entitled" and noting that "agencies could force employees to seek disability retirement in an effort to escape their legal responsibility to provide reasonable accommodations"); see also Smith v. Clark Cty. Sch. Dist., 727 F.3d 950, 957 (9th Cir.2013).

Accordingly, NYU's request that Plaintiff be precluded from arguing that NYU should have accommodated her by offering her another position is DENIED.

### B. Back Pay, Reinstatement, and Front Pay

"The ADA provides that a successful plaintiff shall have available the same remedies that would be available to a plaintiff pursuant to Title VII." Rosso v. PI Mgmt. Assocs., L.L.C., No. 02 CIV. 1702, 2005 WL 3535060, at *15 (S.D.N.Y. Dec. 23, 2005) (citing 42 U.S.C. § 12117(a)). Therefore, back pay, reinstatement, and front pay are available in disability discrimination cases. See 42 U.S.C. § 2000e-5 (g); Picinich v. United Parcel Serv., 318 Fed.Appx. 34, 36 (2d Cir.2009) ("Remedies available to the victims of discrimination are committed to the sound discretion of the district court.")

(citing Carrero v. New York City Housing Auth., 890 F.2d 569, 579–80 (2d Cir.1989)). The purpose of back pay is to make a plaintiff whole, that is, to "completely redress the economic injury the plaintiff has suffered as a result of discrimination." Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145 (2d Cir.1993)(citation omitted). "This award should therefore consist of lost salary, including anticipated raises, and fringe benefits." Id. In general, a plaintiff in an employment discrimination case is entitled to back pay from date of the discrimination through the date of judgment. Id. at 144–45. "In deciding whether an award of front pay is appropriate, a court should consider (1) whether reinstatement [is] either impossible or impracticable (2) whether the plaintiff has a reasonable prospect of obtaining comparable employment; and (3) whether the calculation of front pay would involve undue speculation." Shannon v. Fireman's Fund Ins. Co., 136 F.Supp.2d 225, 233 (S.D.N.Y. 2001) (citing Whittlesey v. Union Carbide Corp., 742 F.2d 724, 728–29 (2d Cir.1984)).

The Court is not persuaded that the cases put forth by NYU establish that Dr. Tse is not entitled to back pay, reinstatement, or front pay because she was receiving SSDI and/or LTD payments. As to back pay, NYU cites Morley v. Ciba–Geigy Corp., for the principle that "[b]ecause the plaintiff was not able to work during the period in question, and is today still unable to work due to disability, she has not suffered any harm as a result of the defendant's alleged discrimination for which she can be compensated." 122 F.3d 1056, 1997 WL 570789 *2 (2d Cir.1997) (unpublished). Similarly, Defendant points to Thornley v. Penton Pub., Inc., which held that "[t]he remedy in a discriminatory discharge case is intended to compensate a plaintiff only for losses suffered as a result of defendant['s] discrimination, and does not ex-

tend to granting back pay for a period when a plaintiff would have been unable, due to an intervening disability, to continue employment." 104 F.3d 26, 31 (2d Cir. 1997) (internal quotations omitted). See also Saulpaugh, 4 F.3d at 145 (finding that in a sexual harassment and retaliation case, "[b]ecause [plaintiff] would not have been entitled to her salary from the Hospital while disabled, her losses ... were not the result of the discrimination that she suffered."). However, these cases are inapposite to the instant case.

First, their holdings rely on prior factual findings that the plaintiffs were unable to work during the period they sought back pay. In both Morley and Thornley, the district courts' findings as to the plaintiffs' inability to work were based on the plaintiffs' statements to or determinations made by the SSA and/or Workers' Compensation Board of New York. Here, however, as explained above, the Court has rejected Defendant's argument that the SSA determination, without more, is dispositive as to Plaintiff's ability to work during the period in question.[7] Indeed, whether Plaintiff would have been able to work with reasonable accommodations and if so, whether

the Defendant provided such accommodations, are precisely the factual questions remaining for trial. Because the Court declines to find at this time that Plaintiff was unable to work within the period during which she received SSDI and LTD benefits, Defendant's cited cases are not persuasive here.[8]

■ Relatedly, these cases highlight the principle that back pay is not available where it is the plaintiff's disability, rather than the defendant's discrimination, that causes the alleged harm to plaintiff. Saulpaugh, 4 F.3d at 145; Morley, 122 F.3d 1056 at *2; Thornley, 104 F.3d at 31. Dr. Tse, however, argues that she was indeed able to work with reasonable accommodations, and that it was only after NYU stopped providing such accommodations that she became unable to work. Thus, the alleged discrimination—NYU's failure to provide reasonable accommodation—rather than Dr. Tse's disability caused her harm. If true, then it would only be through the award of back pay that Dr. Tse could be fully compensated for NYU's discrimination.[9]

---

7. Additionally, Morley and Thornley predate Cleveland; thus, in those cases, the plaintiffs were not given opportunities to provide explanations for any inconsistencies between the award of disability benefits and the claim that the plaintiffs were able to work. Morley, 122 F.3d 1056 at *2; Thornley, 104 F.3d at 31.

8. Even if Dr. Tse was unable to work, the Second Circuit has affirmed back pay awards during periods of complete disability where the defendant's discrimination contributed to the plaintiff's inability to work. See Picinich v. United Parcel Serv., 583 F.Supp.2d 336, 341 (N.D.N.Y.2008), aff'd, 318 Fed.Appx. 34 (2d Cir.2009) ("The Second Circuit left undisturbed this court's previous conclusion that Picinich is entitled to back pay even for periods of time that he was deemed totally disabled due to the fact that Picinich's disability worsened after Defendants' ... failure to accommodate him.")

9. In addition, NYU cites a number of district court cases which are similarly unpersuasive. Specifically, Mr. Cerasia highlights two trial court decisions, which granted similar motions in limine made by Mr. Cerasia in other matters. See Malik v. American International Group, 23055/10, NYLJ 1202598617070, at *1 (N.Y. Sup. Ct. Apr. 19, 2013); Morse v. JetBlue Airways Corp., No. 09–CV–5075 KAM MDG, 2014 WL 2587576, at *5 (E.D.N.Y. June 9, 2014). The Malik case is of little assistance, as it is a New York Supreme Court case which is not authoritative here, and contains no analysis nor citations to Second Circuit law to support its determination that back and front pay were not available. While Morse contains a more thorough analysis of the question, its decision that plaintiff was not entitled to front and back pay during the period she received SSDI benefits was premised on the finding that plaintiff was com-

Assuming Plaintiff would be entitled to damages for lost wages, the next question is whether the collateral source rule applies to her receipt of SSDI and LTD benefits—that is, whether and if so, how much, the Court can or must offset awards of back pay when the Plaintiff has also received disability benefits from outside sources. The Court is unaware of any Second Circuit precedent precisely on point, and the Parties have raised none. However, the Second Circuit has clear that the decision to offset a lost wages award in an employment discrimination case "rests in the sound discretion of district court." Dailey v. Societe Generale, 108 F.3d 451, 460 (2d Cir.1997) (holding that district court had discretion to decline to deduct unemployment insurance benefits from damages award); Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 362 Fed.Appx. 212, 217 (2d Cir.2010) (holding that district court had discretion to decline to offset severance and unemployment payments from damages award). In Dailey, the Second Circuit reiterated that "[w]hile collateral source payments do represent an additional benefit to the plaintiff, ... '[a]s between the employer, whose action caused the discharge, and the employee, who may have experienced other non-compensable losses, it is fitting that the burden be placed on the employer.'" Id. (quoting Promisel v. First Am. Artificial Flowers, Inc., 943 F.2d 251, 258 (2d Cir.1991)). "The theory behind the rule is that, in fairness, the wrongdoer should not benefit because the plaintiff enjoyed independent contractual or employment rights to reimbursement for damages." Siracuse v. Program for the Dev. of Human Potential, No. 07 CV 2205 CLP, 2012 WL 1624291, at *12 (E.D.N.Y. Apr. 30, 2012) (citing Kish v. Board of Ed. of the City of N.Y., 76 N.Y.2d

379, 384, 559 N.Y.S.2d 687, 558 N.E.2d 1159 (N.Y.1990)).

Thus, many Courts in this Circuit have exercised their discretion to decline to deduct collateral source payments from calculations of back pay. See Clark v. Gotham Lasik, PLLC, No. 11 CIV. 01307 LGS, 2013 WL 4437220, at *4–5 (S.D.N.Y. Aug. 20, 2013) (declining to deduct unemployment benefits from back pay award); Becerril v. E. Bronx NAACP Child Dev. Ctr., No. 08 CIV 10283 PAC KNF, 2009 WL 2611950, at *4 (S.D.N.Y. Aug. 18, 2009), report and recommendation adopted sub nom. Becerril v. Ease Bronx NAACP Child Develpoment Ctr. (sic), No. 08 CIV. 10283 PAC KNF, 2009 WL 2972992 (S.D.N.Y. Sept. 17, 2009) ("Since the [defendant] terminated [plaintiff]'s employment wrongfully, it should not receive the benefit of having the plaintiff's unemployment compensation deducted from her total back pay award."); Shannon, 136 F.Supp.2d at 232 (in age discrimination case, explaining that "because unemployment benefits are paid by a state agency rather than by [the defendant] directly, either [plaintiff] or [defendant] will receive this 'windfall' no matter how the benefits are treated. In short, fairness dictates that the 'windfall' be awarded to the victim of the discrimination rather than the perpetrator.") (collecting cases); Sass v. MTA Bus Co., 6 F.Supp.3d 238, 255 (E.D.N.Y. 2014) ("Many courts addressing the award of back pay in employment discrimination claims apply the collateral source rule to deny defendants' requests to offset plaintiffs' recovery of damages from an employer by the amount of unemployment benefits received by plaintiffs after their termination.") (collecting cases); Siracuse, 2012 WL 1624291, at *12–15 (denying de-

---

pletely unable to work, based on both the SSA eligibility determination and the employer's LTD policy. Id. at *4. Here, again, the Court

has made no such factual finding regarding Plaintiff's ability to work, and thus does not find Morse instructive.

fendant's motion to offset damages award by short- and long-term disability benefits paid to plaintiff by a third-party insurer, explaining that the "need to deter future discrimination outweighs the concern that the victim is receiving a windfall.") (collecting cases).

■ This Court sees no reason to depart from this trend, nor any reason why the discretion afforded to judges in the context of offsetting unemployment benefits should not extend to disability benefits. Furthermore, the clear holding of Cleveland and its progeny, which permits ADA claims to move forward despite a finding that a plaintiff is disabled and thus eligible for SSDI benefits, would be rendered meaningless if a major source of potential damages, lost wages, were precluded or offset once a plaintiff applied for and received disability benefits. This is especially true in cases like this one, where the Plaintiff asserts that the Defendant demanded that she go on one hundred percent long-term disability rather than providing her with the reasonable accommodations she needed to remain in her job. Offsetting damages awards based on a plaintiff's receipt of disability benefits in such situations would create more than a windfall to employers; it would enable employers to shift the burden of their discriminatory conduct onto public and private insurance systems created to serve larger public purposes. See Dailey, 108 F.3d at 459–60 (citing N.L.R.B. v. Gullett Gin Co., 340 U.S. 361, 364, 71 S.Ct. 337, 95 L.Ed. 337 (1951)("[P]ayments to the employees were not made to discharge any liability or obligation of respondent, but to carry out a policy of social betterment for the benefit

of the entire state."); EEOC v. Ford Motor Co., 645 F.2d 183, 196 (4th Cir.1981) ("[A]wards of back pay under Title VII should not be affected by a system of compensation which is designed to serve a wholly independent social policy.")).

Even if the Court were to find that the facts warranted an exercise of the Court's discretion to offset the lost wages award, NYU has put forth neither legal authority nor relevant facts in this case to support its argument that Dr. Tse would not be entitled to any back pay. According to the spreadsheet provided by Dr. Tse at the May 12 conference, she received $195,079.00 in LTD benefits over the relevant period, but would have been entitled to $742,437.00 in salary and benefits during the same period.[10] Therefore, even assuming an offset of the lost wage damages, Dr. Tse could still be entitled to as much as $547,358.00.

As to reinstatement and front pay, as explained in detail above, the Court declines to accept the SSA determination of Dr. Tse's disability as definitive proof that she was totally unable to work and therefore could not be reinstated to her prior position. Similarly, because front pay is an alternative to reinstatement, the Court declines to rule on the availability of front pay at this time.

Accordingly, NYU's request that Dr. Tse be precluded from arguing that she is entitled to back pay, reinstatement, or front pay is DENIED.

### III. CONCLUSION

For the reasons stated above, Defendant NYU's Motion in Limine is DENIED in all respects. A bench trial in this matter is

---

10. The Court notes that the financial submissions made by Dr. Tse subsequent to the conference indicate that Dr. Tse received approximately $2,100 per month in Social Security benefits. It is not clear whether this amount

was included in her calculation of LTD benefits. Even if it were, her total annual benefits would approximately $62,000, less than half of her estimated annual salary and benefits.

scheduled to commence on Monday, June 13, 2016 at 10:00 A.M.

SO ORDERED.